# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Zhaoyuan Junbang Trading Co., Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd, <br><br> Plaintiffs, <br> v. <br><br> United States. | Court No. 24-00180 |

## MEMORANDUM OF LAW IN SUPPORT OF THE RULE 56.2 MOTION OF PLAINTIFFS FOR JUDGMENT UPON THE AGENCY RECORD

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
    Counsel for Plaintiffs

Dated: March 4, 2025

# Table of Contents

I. INTRODUCTION ..................................................................................................1

II. STATEMENT PURSUANT TO RULE 56.2(c) ...............................................2

    A. Administrative Determination Under Review ...............................................2

III. Issues of Law .......................................................................................................2

IV. Summary Of Arguments ....................................................................................3

V. Statement Of Facts ..............................................................................................4

VI. STANDARD OF REVIEW .................................................................................6

VII. ARGUMENT ........................................................................................................8

    A. Commerce's Calculation of the AFA rate is contrary to law .......................8

    B. The Department Ignored Facts of Record in Calculating the EBC ............9

    C. The Department Did not Provide an Opportunity to Remedy Any Deficiency ................................................................................................11

VIII. CONCLUSION ..................................................................................................15

# Table of Authorities

**Cases**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ..................................................................................................7

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974) ...................................8

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) .................................................................8

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 19 (1938). ..........................7

*Dalian Meisen Woodworking Co. v. U.S.*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) ...............................................................................9, 10, 11

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) ..............................7

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) ..................................................................................................7

*Guizhou Tyre Co. v. United States,* 43 CIT ___, 415 F. Supp. 3d 1402, (2019) ..................................................................................................11

*Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)* ..................................7

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................................8

*Mukand, Ltd. v. United States*, 7676 F.3d 1300 (Fed. Cir. 2014) .............................14

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) ..................................................................................................9

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Ct. App. Fed. Cir. 2003) ..................................................................................................12

*Novosteel SA v. United States,* 284 F. 3d 1261 (Fed. Cir. 2002)..............................8

*NSK Ltd. et al. v. United States* 481 F.3d 1355(Fed. Cir. 2007) .............................14

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) ..................................................................................................9

*Risen Energy Co. v. United States*, (Risen I) 46 CIT __, 570 F.Supp. 3d 1369 (2022) ..............................................................................10

*Risen Energy Co. v. United States* (Risen III), 47 CIT __, 665 F.Supp. 3d 1335 (2023) ..............................................................................10

*Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 57 (Ct. Intl Trade 1993) ................................................................................ 9

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376 (Fed. Cir. 2001) ..................................... 9

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) ............................ 8

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) ............................................................................................................ 8

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951), ....................................... 7

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987). ......................... 7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013). ................................................................................ 9

**<u>Statutes</u>**

19 U.S.C. § 1516a(a)(2)(B)(iii) ................................................................................ 2

19 U.S.C. §1516a(b) ................................................................................................ 6

19 U.S.C. §1766m(d) ...................................................................................... 3, 4,12

19 U.S.C. §1673d(c)(5) ............................................................................................ 6

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| Zhaoyuan Junbang Trading Co., Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd,<br><br>                    Plaintiffs,<br>     v.<br><br>United States. | Court No. 24-00180 |

**MEMORANDUM OF LAW IN SUPPORT OF<br>THE RULE 56.2 MOTION OF PLAINTIFFS<br>FOR JUDGMENT UPON THE AGENCY RECORD**

## I. INTRODUCTION

This is an appeal from the Countervailing Duty Investigation of Pea Protein from China. Plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") was a mandatory respondent in the review, and Plaintiffs Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd, non-mandatory respondents in the investigation. Junbang was a party to the proceeding, having filed numerous questionnaire responses and comments, as well as a case brief. Plaintiffs Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd were parties to the proceeding having actively participated and having filed a case brief. The Plaintiffs assert the following errors in the Commerce Department's ("Commerce" or "Department") final determination:

- The Department erred when it applied total AFA for the Export Buyer's Credit Program;
- The Department failed to take into account all of the facts of record in making its determination; and
- The Department failed to comply with 19 U.S.C. 1677m(d) when it did not provide plaintiff Junbang the opportunity to address the apparent deficiencies in the responses.

## II. STATEMENT PURSUANT TO RULE 56.2(c)

### A. Administrative Determination Under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest Commerce's final determination and countervailing duty order in *Pea Protein from the People's Republic of China*, published as *Certain Pea Protein From the People's Republic of China: Antidumping and Countervailing Duty Orders* at 89 Fed. Reg. 68,390 (PR 390[1]) and Issues and Decision Memorandum ("IDM") accompanying the Department's Final Determination (PR 376). In the Final Results, Commerce calculated a countervailing subsidy rate of 15.15% for Junbang and applied a countervailing subsidy rate of 15.84% based on an average of the rate for the two mandatory respondents for the other plaintiffs.

## III. Issues of Law

The Plaintiffs present the following issues. Commerce's determination was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law. The issues are:

- **Application of Total AFA to the Export Buyer's Credit Program.**

---

[1] This brief uses the following abbreviations: **P.R.** = Public Record; **C.R.** = confidential record; **AFA** = adverse facts available; **EBC** = Export Buyer's Credit

2

In calculating the amount of the subsidy provided by the Export Buyer's Credit Program ("EBC"), the Department calculated this amount based on total adverse facts and did not take into account the information provided by plaintiff in its responses. In the absence of a gap in the record, and based on the full cooperation of the respondent, the application of AFA was inappropriate.

- **The Department Ignored Facts of Record in Calculating the EBC.**

In calculating the amount of the subsidy provided by the EBC, the Department ignored the affidavits and statements provided by plaintiff's Customers which established that they did not receive such credit. To the extent that the Department properly applied facts available (as opposed to "adverse facts available") to this credit, the amount should have been adjusted to take into account the customers/importers and the evidence that they provided that such entities did not receive a credit.

- **The Department Failed to Ask Additional Questions About the EBC.**

19 U.S.C. 1677m(d) clearly states that the Department must identify deficiencies in responses and provide the parties an opportunity to remedy or explain the deficiency. In the case of the EBC, the Department did not do so. The Department cannot draw adverse inferences or otherwise penalize respondents where, as here, the Department did not identify a deficiency and request that it be addressed.

IV.   **Summary Of Arguments**

The Department committed multiple errors. The first of these was a failure to properly calculate the amount of the subsidy provided by the Export Buyer's Credit Program ("EBC"). The Department calculated this amount based on total adverse facts and did not take into account the information provided by plaintiff in

3

its responses. Such information included statements from the exporter and producer of the non-use of the credit along with statements from the importer with respect to the non-use of the credit. The Department verified the responses of the exporter and producer and conducted verifications of all entities for which the Department sought verification. The Department should not have applied adverse facts.

Secondly, the Department ignored facts of record in calculating the amount of the subsidy provided by the EBC. Even if the Department had decided that the use of facts available was appropriate, it should not have calculated the margin using adverse inferences. Specifically, the Department ignored the affidavits and statements provided by plaintiff's Customers which established that they did not receive such credit. To the extent that the Department properly applied facts available (as opposed to "adverse facts available") to this credit, the amount should have been adjusted to take into account the customers/importers and the evidence that they provided that such entities did not receive a credit.

Finally, the the Department failed to ask additional questions about the EBC program. To the extent that the Department determined that there were gaps in the information, the Department should have asked plaintiffs to address such perceived gaps and provided an opportunity to resolve such gaps. 19 U.S.C. 1677m(d) clearly states that the Department must identify deficiencies in responses and provide the parties an opportunity to remedy or explain the deficiency. Tthe Department did not do so. The Department cannot draw adverse inferences or otherwise penalize respondents where, as here, the Department did not identify a deficiency and request that it be addressed.

## V.   Statement Of Facts

The countervailing duty investigation on **Pea Protein from the People's Republic of China** was initiated on August 7, 2023 (Certain Pea Protein from the People's

Republic of China: Initiation of Countervailing Duty Investigation, 88 Fed. Reg. 52116 (August 7, 2023) (P.R. 43) as a result of the petition filed by the domestic industry on July 12, 2023.  (P.R. 1 at 1)  In this investigation, Commerce issued its preliminary results as *Certain Pea Protein From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 88 Fed. Reg. 87403 (December 18, 2023) P.R. 302, accompanied by Commerce's December 11, 2023 memo entitled *Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation on Certain Pea Protein from the People's Republic of China* (date) ("PDM"), P.R. 303.

Plaintiffs made the following submissions containing information pertinent to this appeal:

Initial Response to Section III of the Department's Initial Questionnaire. (P.R. 160 at page 1 and C.R. 70 at page 1).

Exhibit 13 to Junbang's response contained a full list of the overseas customers was provided (C.R. 73 at 265). In Exhibit 14 a series of affidavits were provided from certain customers who stated that they did not benefit from the EBC program. (C.R. 73 at 267 - 272)  Exhibit 15 to the response of Shuangta Food was a list of customers (C.R. 76 at 206).  In Exhibit 16 an affidavit was provided by a customer who stated that they did not benefit from the Export Buyer's Credit. (C.R. 76 at 208).

**Response of Junbang to Suppl. Questionnaire of November 27, 2023**.  In Exhibit SQ-5, Junbang provided additional affidavits from its customers confirming non-usage of this program. (C.R. 177 at 47-48)

**Case Brief**

As confirmed in the case brief (C.R. 277 at 8-9) the Department did not ask any questions about the EBC program beyond the original Section III questionnaire

and did not address any questions to plaintiff with respect to this program in any supplemental is program in any supplemental questionnaire issued to plaintiff.  The Department did ask multiple questions to the other mandatory respondent in multiple supplemental questionnaires.

In addition to the foregoing, the Department verified the responses of Zhaoyuan Junbang Trading Co., Ltd. and its cross-owned company Yantai Shuangta Food Co., Ltd.. (P.R. 274)

Commerce issued its final results as *Certain Pea Protein From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, 89 Fed. Reg. 55557 (July 5, 2024) ("Final. Results")(P.R. 385) , accompanied by Commerce's June 27, 2024 *Decision Memorandum for the Final Affirmative Determination in the Countervailing Duty Investigation of Certain Pea Protein from the People's Republic of China* ("FDM"), (PR 376).  On August 24, 2024 Commerce issued the Countervailing duty order.  It was published as *Pea Protein from the People's Republic of China*, *Federal Register* notice published as *Certain Pea Protein From the People's Republic of China: Antidumping and Countervailing Duty Orders* at 89 Fed. Reg. 68,390 (August 26, 2025)(P.R. 390).

## VI. <u>STANDARD OF REVIEW</u>

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review

the statute to determine whether Congress has directly spoken to the precise question at issue.

If the statute is silent or ambiguous with respect to the specific issue, the Supreme Court has held that it is responsibility of the Federal Courts to determine the meaning of the law. *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)*. *Loper* stated in relevant part "*Chevron* is overruled. Courts must exercise their dependent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright* 144 S.Ct. 2244 at 2273.

Furthermore, once the statute has been properly interpreted by the Court, the question is then whether the decision is supported by substantial evidence. Substantial evidence is well defined by Court precedent. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of

itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted). Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, while "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

VII. **ARGUMENT:**

    A. **Commerce's Calculation of the AFA rate is contrary to law.**

In calculating the amount of the subsidy provided by the EBC, the Department calculated this amount based on total adverse facts and did not take into account the information provided by plaintiff in its various responses. In the absence of a gap in the record, and based on the full cooperation of the respondent, the application of AFA was inappropriate.

8

Critically, plaintiffs provided all of the information in its possession stating that it did not receive any benefits and also provided documents from its customers establishing that they did not benefit from such program. There is no evidence of record that plaintiffs did not fully cooperate nor is there any evidence, let alone allegation, that plaintiffs did not provide all of the information in their possession. Simply put, there was substantial evidence of non-use provided by plaintiffs and their customers, and there is no evidence of use, nor is their any reasonable adverse inference which would support the use of adverse facts. The Department's determination is pure speculation and contrary to all of the evidence of record. The Courts have agreed with this and found that AFA under similar circumstances was not appropriate. (See *Dalian Meisen Woodworking Co. v. United States*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024)).

### B. The Department Ignored Facts of Record in Calculating the EBC

In calculating the amount of the subsidy provided by the EBC the Department must be guided by the principle of accuracy. Congress intended that Commerce calculate margins as accurately as possible and use the best available information. *See Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013). In *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016), the Court explained that a Commerce determination is "'accurate' if it is correct as a <u>mathematical and factual matter</u>…" (emphasis added). The Courts have noted that "one of the fundamental principles underlying the trade statute –accuracy. It is this endeavor for accuracy … that lends respectability to U.S. trade statutes." *Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 57, 64 (Ct. Intl Trade 1993).

The Department must ensure that the selected rate reasonably reflects the facts of record. In this case, it is uncontestable that at least a portion of the customers did not avail themselves of this program and the Department was properly notified of this fact. Specifically, the Department ignored the affidavits and statements provided by plaintiff's Customers which established that they did not receive such credit. To the extent that the Department properly applied facts available to this program, the Department should not have calculated a rate based on a 100% non-response rate. The amount should have been adjusted by taking into account the entities that established that they did not receive a credit. That the Department is required to make such an adjustment is well established by Court precedent. Simply put, in making this determination, the Department ignored case law which was directly on point and which was clear and unequivocal. In *Risen Energy Co. v. United States*, (Risen I) 46 CIT __, 570 F.Supp. 3d 1369 (2022) and *Risen Energy Co. v. United States* (Risen III), 47 CIT __, 665 F.Supp. 3d 1335 (2023) the Court held:

> At this stage, every piece of evidence presented to Commerce and to the court supports the conclusion that Risen's sales were not aided by the EBCP. In the face of substantial evidence of non-use from Risen and its customers, and no evidence of use supported by actual evidence or any reasonable AFA inference, Commerce must not include a subsidy amount for EBCP.
> *Risen* III at 1344

The Risen case involved an Administrative Review, not an investigation, but is still applicable. The Courts have also expanded this doctrine to investigations. In *Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F.Supp.3d 1322 (Ct. Int'l Trade 2024) the Court held that " on remand, for each customer whose non-use of the Program was verified Commerce must determine a customer-specific rate that excludes a subsidy amount for the Program, and recalculate Ancientree's total rate, and the all others rate." *Dalian Meisen* at 1338.

The primary difference is that in an investigation, the information must be verified. However, in the case at bar, all of the information was verified by the Department, and all of the programs for which the Department elected to examine were verified. (C.R. 347). As noted in *Dalian Meissen*:

> Nothing in the statutory directive that Commerce "shall verify all information relied upon in making... a final determination in an investigation" suggests that unless all information is verified, none of the information that is actually verified can be relied upon to make a final determination. But here instead of relying on the non-use information on the record that the Department was able to verify, Commerce relied on adverse facts available as applied to all of Ancientree's U.S. sales.
> Dalian Meisen at 1336

In this matter, the Department conducted a verification. It was granted access to every entity and everything that the Department wished to examine and verify was reviewed. Information is only considered unverified if it was requested to be examined, but could not be examined, or the examination revealed flaws. See *Guizhou Tyre Co. v. United States,* 43 CIT ___, ___, 415 F. Supp. 3d 1402, 1405 (2019) That is not the case here. The specific information was not requested to be examined, but could have been examined if the DOC had elected to examine this element at verification.

Based on the clear precedent cited above, which grew out of reviews and applies to investigations, it is clear that the Department's application of AFA and its calculation of the EBC is contrary to law. The Department should follow precedent, particularly where as here the precedent is on all fours with the facts in this case, and must, at a bare minimum, adjust the rate downward to reflect the established non-use.

### C. **The Department Did not Provide an Opportunity to Remedy Any Deficiency.**

The countervailing duty process does not require perfection, only that the respondent make maximum efforts. The Court has stated:

> Compliance with the "best of its ability" standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While **the standard does not require perfection** and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping. It assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers, to avoid a risk of an adverse inference determination in responding to Commerce's inquiries: (a) take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce; (b) have familiarity with all of the records it maintains in its possession, custody, or control; and (c) conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of the importers' ability to do so.
> *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Ct. App. Fed. Cir. 2003)(Emphasis Added)

As part of the understanding that while perfection is not required, accuracy is preferred, the statute provides for a mandatory process for the agency to seek clarification on potential errors. This statute contemplates that the Department will ask questions if the responses raise questions, rather than rejecting them out of hand. The controlling statute clearly provides that in order to take adverse inferences, the Department must identify a deficiency, provide a party an opportunity to correct this deficiency, and the party must then not correct the deficiency. 19 U.S.C. 1677m is quite clear. It states:

> (d) Deficient submissions
> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of

12

> investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—

19 U.S.C. 1677m(d)

The Department did not follow the mandate of the statute. The statute essentially has five tests.

1. Was the information provided in a request for information? If the answer is yes, then the next test should be considered. If the answer is no, there is nothing to clarify.
2. Did the respondent submit a substantially complete response which the Department determined still raised questions? If the answer is yes, then the next test should be considered. If the answer is no, the Department is not required to seek clarification.
3. Does sufficient time remain to seek a clarification? If the answer is yes, the Department must seek clarification. If the answer is no, the Department is not required to seek clarification.
4. Did the Department request clarification or an explanation or further detail? If the answer is yes, then the next test should be considered. If the answer is no, the Department has violated the mandate of the statute.
5. Did the respondent adequately respond to the request from the Department?

In this case, Junbang submitted information in response to an express request. Such response was essentially complete and answered the questions asked. The Department had time to ask for clarification, and in fact, issued supplemental questionnaires after the submission of the response. Such questionnaires did not focus on the EBC issue, but the Department could have done so. The Department did not issue any further questions on the EBC issue. As the Department did not ask, Junbang could not further respond to the Department as the Department had not

13

made its concerns known. In sum, Junbang provided information about its customer's usage of export buyer's credit in its original Section III response and supplemented this in its first supplemental questionnaire response (notwithstanding the absence of a question form the Department). The Department did identify any flaws in the reported data nor did it ask any further questions about the EBC program. Quite to the contrary, the only additional information on this program was provided without a direct prompting from the Department. The Courts have long held that in applying this statutory provision, the Department must provide an opportunity to remedy or explain any deficiency. In *NSK Ltd. et al. v. United States* 481 F.3d 1355(Fed. Cir. 2007) the Court stated:

> NTN makes the related argument that before using facts otherwise available to calculate its freight expenses, Commerce was required to comply with 19 U.S.C. § 1677m(d), which provides that if Commerce determines that a response to a request for information is insufficient, it must notify the submitter and provide an opportunity to remedy or explain the deficiency. Commerce, however, satisfied its obligations under section 1677m(d) when it issued a supplemental questionnaire specifically pointing out and requesting clarification of NTN's deficient responses.
> NSK at FN 1.

In *Mukand, Ltd. v. United States*, 7676 F.3d 1300 (Fed. Cir. 2014) the Court stated:

> Commerce determined that Mukand's responses were deficient and resorted to facts otherwise available. Pursuant to statute, Commerce may resort to facts otherwise available to complete the record when an interested party fails, for whatever reason, to provide requested information. Before resorting to facts otherwise available, Commerce must notify the respondent of the nature of the deficiency and, to the extent practicable, provide an opportunity for the respondent to remedy or explain the deficiency. 19 U.S.C. § 1677m(d). If the respondent's explanation is unsatisfactory or untimely, Commerce may "disregard all or part of the original and subsequent responses." Id. Commerce may not, however, refuse to consider necessary information that satisfies the five criteria outlined in section 1677m(e).

14

Mukand at 1304.

In this case, the Department issued multiple supplemental questionnaires to Junbang but did not ask any additional questions about the EBC Program. (P.R. 226, P.R. 263 , and P.R. 308 ). In stark contrast, the Department did issue a supplemental questionnaire to the other mandatory respondent seeking further information on the EBC Program. (P.R. 227 at 6-8) The issues about EBC were well known to the Department, as illustrated by the questions asked of the other mandatory respondent. Critically, the data was presented by Junbang in the initial questionnaire response. The Department issued multiple supplemental questionnaires to Junbang, but did not identify the deficiency and request Junbang to explain the purported discrepancies. In the absence of such questions, the Department cannot take adverse inferences and use adverse facts in calculating the value for the program.

## VIII.   CONCLUSION

Plaintiffs respectfully request that this Court:

Remand this matter to the Department of Commerce to recalculate the countervailing duty subsidy rate by eliminating the EBC subsidy from the calculation. Such act would be consistent with Court precedent and the facts of this case.

                                                              Respectfully submitted,

                                                          /s/ David J. Craven

                                                          David J. Craven
                                                          Counsel to Zhaoyuan Junbang Trading
                                                          Co., Ltd., Linyi Yuwang Vegetable
                                                          Protein Co., Ltd., Shandong Yuwang
                                                          Ecological Food Industry Co., Ltd., and

        Fenchem Biotek Ltd, Jian

        Craven Trade Law LLC
        3744 N Ashland
        Chicago, IL 60613
        (773) 245-4010
        David.craven@tradelaw.com

Date March 4, 2025