IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| ZHAOYUAN JUNBANG TRADING CO., LTD., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| NURA USA, LLC, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | Court No. 24-00180 |
| UNITED STATES, | ) ) | PUBLIC VERSION |
| Defendant, | ) ) ) | Confidential Information Redacted On Pages 5, 7, 8, 11, 19, 20, 23, 25 |
| and | ) ) | |
| PURIS PROTEINS, LLC, | ) ) | |
| Defendant-Intervenor. | ) ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD

<div style="margin-left: 45%;">

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

</div>

Of Counsel:

PAUL THORNTON
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

Douglas Edelschick
Senior Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-9303

May 13, 2025

Attorneys for Defendant United States

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT PURSUANT TO RULE 56.2 ....................................................................2

I.      The Administrative Determination Under Review .............................................2

II.     Issues Presented For Review .............................................................................2

STATEMENT OF FACTS ...............................................................................................3

I.      Initiation Of The Investigation And Respondent Selection ................................3

II.     The Questionnaire Responses Concerning The Export Buyer's Credit Program ...............3

III.    The Preliminary Determination ........................................................................6

IV.    The Final Determination ...................................................................................7

SUMMARY OF THE ARGUMENT .................................................................................8

ARGUMENT ..................................................................................................................9

I.      Standard Of Review .........................................................................................9

II.     Commerce Lawfully Determined That Junbang Benefitted From The Export
Buyer's Credit Program ..................................................................................11

      A.     Legal Framework ...................................................................................12

      B.     Commerce Lawfully Applied Facts Available With An Adverse Inference
Regarding The Export Buyer's Credit Program Due To The Government
Of China's Failure To Cooperate To The Best Of Its Ability ..............................14

            1.    Information Withheld By The Government Of China Is Necessary
To Verify Non-Use .................................................................................14

            2.    Information Submitted By Junbang Was Insufficient To Verify
Non-Use Of The Export Buyer's Credit Program ...................................19

            3.    Commerce Was Not Obligated To Provide Junbang With An Opportunity
To "Remedy" Its Response That Was Insufficient To Fill The Gap .........23

III.    The Remaining Claims In This Case Are Waived ............................................26

CONCLUSION ...............................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                                   **Page(s):**

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    287 F. Supp. 3d 1361 (Ct. Int'l Trade 2018) ...................................................12

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)................................10

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, No. 22-00210, 2025 Ct. Intl.
    Trade LEXIS 36, 2025 WL 999962 (Ct. Int'l Trade Apr. 3, 2025)............................ 20-21

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
    352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ....................................................14

*Changzhou Trina Solar Energy Co. v. United States*,
    195 F. Supp. 3d 1334 (Ct. Int'l Trade 2016) ................................................ 14-15

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007)........................................10

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966).................................................10

*Cooper (Kunshan) Tire Co., Ltd. v. United States*,
    610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ..............................................20, 24

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) .........................27, 28

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
    719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) ........................................21, 22, 24

*Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110, 2023 Ct. Intl.
    Trade LEXIS 70, 2023 WL 3222683 (Ct. Int'l Trade 2023)...............................22

*Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010) ..............................28, 29

*Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020) ......26

*Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) ...........................12

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) ................13, 24

*Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*, No. 21-00088, 2022 Ct. Int'l
    Trade LEXIS 106, 2022 WL 4180886, at *6 n.5 (Ct. Int'l Trade Sept. 13, 2022)............20

*Fujitsu Gen. Ltd. v. United States*, 88 F. 3d 1034 (Fed. Cir. 1996) ................................10

*Fuwei Films (Shandong) Co. v. United States*, 791 F. Supp. 2d 1381 (Ct. Int'l Trade 2011).......28

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006).....................10

## TABLE OF AUTHORITIES (continued)

**Cases (continued):**                                                                                            **Page(s):**

*Gov't of Canada v. United States*, 686 F. Supp. 3d 1320 (Ct. Int'l Trade 2024) ........................27

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013) .........................................27

*Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*,
    405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) ....................................................................14

*KYD, Inc. v. United States*, 607 F.3d 760 (Fed. Cir. 2010) ............................................................13

*Mueller Comercial de Mexico, S. de R.L. de C.V. v. United States*,
    753 F.3d 1227 (Fed. Cir. 2014).........................................................................................12

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006).............................................10

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)............................................13

*PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009).......................................................10

*Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373 (Fed. Cir. 2016) ...................13

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) ..................21-23

*Risen Energy Co. v. United States*, 2023 Ct. Int'l Trade LEXIS 52 (Ct. Int'l Trade 2023) ..........23

*Risen Energy Co. v. United States*, 570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ..................21-23

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006).......................26, 29

*Timken Co. v. United States*, 699 F. Supp. 300 (Ct. Int'l Trade 1988)................................. 10-11

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) .......................................................................10

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ............27

**Statutes:**

19 U.S.C. § 1516a .......................................................................................................................10, 26

19 U.S.C. § 1677e .............................................................................................................6, 12, 18, 19

19 U.S.C. § 1677m.................................................................................................................................24

28 U.S.C. § 2631 ...............................................................................................................................26

28 U.S.C. § 2637 .........................................................................................................................27, 29

## TABLE OF AUTHORITIES (continued)

**Regulations:**                                                                                      **Page(s):**

19 C.F.R. § 351.308 .................................................................................................12

19 C.F.R. § 351.309 ..................................................................................27, 28, 29

**Administrative Determinations:**

*Certain Amorphous Silica Fabric from China*, 82 Fed. Reg. 8,405 (Dep't of Commerce
    Jan. 25, 2017) (final CVD determination) ........................................................15

*Certain Pea Protein from China*, 88 Fed. Reg. 52,116
    (Dep't of Commerce Aug. 7, 2023) (initiation of CVD investigation) .............................2

*Certain Pea Protein from China*, 88 Fed. Reg. 87,403
    (Dep't of Commerce Dec. 18, 2023) (prelim. CVD determination)...................................6

*Certain Pea Protein from China*, 89 Fed. Reg. 55,557
    (Dep't of Commerce July 5, 2024) (final CVD determination)............................... *passim*

*Certain Pea Protein from China*, 89 Fed. Reg. 68,390
    (Dep't of Commerce Aug. 26, 2024) (CVD order) .........................................................2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ZHAOYUAN JUNBANG TRADING CO., LTD., *et al.*, <br><br>    Plaintiffs, <br><br>    and <br><br> NURA USA, LLC, <br><br>    Plaintiff-Intervenor, <br><br>    v. <br><br> UNITED STATES, <br><br>    Defendant, <br><br>    and <br><br> PURIS PROTEINS, LLC, <br><br>    Defendant-Intervenor. | Court No. 24-00180 <br><br> PUBLIC VERSION <br><br> Confidential Information Redacted On Pages 5, 7, 8, 11, 19, 20, 23, 25 |

DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motion for

judgment on the agency record filed by plaintiffs Zhaoyuan Junbang Trading Co., Ltd.

(Junbang), Linyi Yuwang Vegetable Protein Co., Ltd. (Linyi Yuwang), Shandong Yuwang

Ecological Food Industry Co., Ltd. (Shandong Yuwang), and Fenchem Biotek Ltd. (Fenchem

Biotek) (ECF No. 34-1), which challenge the Department of Commerce's final determination in

the countervailing duty (CVD) investigation of pea protein from the People's Republic of China

(China).  Commerce's final determination is lawful and is supported by substantial evidence.

Accordingly, the United States respectfully requests that the Court sustain Commerce's

determination, deny plaintiffs' motion and enter judgment in favor of the United States.

<div align="center">

STATEMENT PURSUANT TO RULE 56.2

</div>

I.      Administrative Determination Under Review

The determination at issue is *Certain Pea Protein from China*, 89 Fed. Reg. 55,557

(Dep't of Commerce July 5, 2024) (final CVD determination) (*Final Determination*) (P.R. 385),

which adopted an accompanying Issues and Decision Memorandum (Dep't of Commerce June

27, 2024) (IDM) (P.R. 376).[1]  The period of investigation is January through December 2022.

*Id.*  Following an affirmative injury determination by the United States International Trade

Commission, Commerce published a CVD order covering pea protein from China.  *Certain Pea*

*Protein from China*, 89 Fed. Reg. 68,390 (Dep't of Commerce Aug. 26, 2024) (P.R. 390).

II.     Issues Presented For Review

1.      With respect to the issues raised by plaintiff Junbang in the opening brief, whether

Commerce's determination to countervail the Export Buyer's Credit Program based upon facts

available with an adverse inference is lawful and supported by substantial evidence.

2.      Whether plaintiffs have waived the remaining claims in this case, because they

failed to address count III of the complaint in the opening brief, and because three of the four

plaintiffs did not submit a case brief or exhaust any arguments before Commerce.

---

[1]  Public documents in the administrative record are designated as "P.R." and confidential documents are designated as "C.R."  Business proprietary information from confidential documents is designated inside {brackets} and is redacted from the public version of this brief consistent with Rule 5(g) of the Court's Rules.

STATEMENT OF FACTS

I.    Initiation Of The Investigation And Respondent Selection

In July 2023, PURIS Proteins, LLC (PURIS Proteins) submitted to Commerce a petition that requested the imposition of countervailing duties on pea protein from China. *Certain Pea Protein from China*, 88 Fed. Reg. 52,116 (Dep't of Commerce Aug. 7, 2023) (initiation of CVD investigation) (*Initiation Notice*) (P.R. 49). In August 2023, Commerce initiated a CVD investigation of pea protein from China. *Id.* Commerce's CVD investigation included consideration of the Export Buyer's Credit Program from the Ex-Im Bank of China. *See* CVD Initiation Checklist at 13-14 (P.R. 48; C.R. 23).

Following initiation, Commerce issued quantity and value (Q&V) questionnaires to potential respondents. *See Initiation Notice*, 88 Fed. Reg. at 52,118. Based on its analysis of the Q&V responses, Commerce selected plaintiff Junbang and Yantai Oriental Protein Technology, Co., Ltd. (Yantai Oriental) as mandatory respondents. Respondent Selection Memo. at 4-5 (Dep't of Commerce Aug. 24, 2023) (P.R. 95; C.R. 37). Yantai Oriental is not a party in this case and no party has challenged Yantai Oriental's subsidy rate in this investigation. Therefore, we do not discuss Yantai Oriental further in this brief. Plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek submitted Q&V questionnaire responses but were not selected as mandatory respondents for individual investigation. Preliminary Decision Memorandum (PDM) at 2 n.9 (P.R. 303); Linyi Yuwang Q&V Quest. Resp. (P.R. 58, C.R. 24); Shandong Yuwang Q&V Quest. Resp. (P.R. 59, C.R. 25); Fenchem Biotek Q&V Quest. Resp. (P.R. 84, C.R. 33); Index to Admin. Record, Nov. 25, 2024, ECF Nos. 27-1, 27-2.

II.    The Questionnaire Responses Concerning The Export Buyer's Credit Program

During the investigation, Commerce issued initial and supplemental questionnaires to the government of China. Gov't of China Initial Questionnaire (Dep't of Commerce Aug. 25, 2023)

(P.R. 96) (stating that government of China is responsible for forwarding initial questionnaire to respondent companies) (Gov't of China Initial Quest.); Gov't of China Suppl. Questionnaire (Dep't of Commerce Nov. 3, 2023) (P.R. 238) (Gov't of China Suppl. Quest.).  Thereafter, Commerce received questionnaire responses from the government of China and Junbang.  Gov't of China Initial Questionnaire Response (Oct. 18, 2023) (Gov't of China Initial Quest. Resp.) (P.R. 165-220; C.R. 89-130); Gov't of China Suppl. Questionnaire Resp. (Nov. 20, 2023 (P.R. 265-269; C.R. 166-70) (Gov't of China Suppl. Quest. Resp.); Junbang Resp. to Section III Initial Questionnaire (Oct. 18, 2023) (P.R. 160-164; C.R. 70-88) (Junbang Initial Quest. Resp.).

In its initial questionnaire, Commerce requested that the government of China provide the laws, regulations or other governing documents for the Export Buyer's Credit Program, as well as a list of all partner / correspondent banks involved in the disbursement of funds under the program.  Gov't of China Initial Quest. at II-5-II-6; PDM at 31.  Additionally, because in 2013 the government of China made certain changes to the program, eliminating elements that Commerce had previously used for verification, Commerce requested the revised 2013 administrative measures.  Gov't of China Initial Quest. at II-6.  Furthermore, to verify any potential assertions of non-use upon the program, Commerce requested that the government of China provide documents, databases, and accounts, that it had examined, as well as a step-by-step detail of its query, to determine whether there was non-use.  *Id.*

In response, the government of China stated that the respondents did not use the Export Buyer's Credit Program during the period of investigation and asserted that this question was "not applicable."  Gov't of China Initial Quest. Resp. at 70-75; *see also* PDM at 31; IDM at 26-29.  The government of China also provided screenshots from the China Ex-Im Bank database in an attempt to support its claim that none of the reported customers used this program.  Gov't of

China Initial Quest. Resp. at Ex. II.B.10.  But the screenshots from the China Ex-Im Bank's credit management system did not show the data query from the China Ex-Im Bank and did not explain how the China Ex-Im Bank performed the query search.  IDM at 28; Gov't of China Initial Quest. Resp. at Ex. II.B.10.  Junbang also responded to the initial questionnaire by providing a list of its U.S. customers during the period of investigation and reporting that it did not assist those customers in participating in the Export Buyer's Credit Program, but Junbang *did not* provide non-use certifications from the vast majority ({ } of 26) of its U.S. customers.[2]  *See* PDM at 30 (P.R. 303); Junbang Initial Quest. Resp. Exs. 13 & 15 (listing 26 U.S. customers); *id.* Exs. 14 & 16 (providing certifications for only { } out of the 26 listed U.S. customers).

In a supplemental questionnaire, Commerce stated that it had reviewed the initial questionnaire responses and had "determine[d] that additional information and / or clarification of information from the [government of China] is necessary."  Gov't of China Suppl. Quest. at 1. Specifically, Commerce requested – for a second time – that the government of China provide, among other things:  (1) a list of all partner / correspondent banks involved in the disbursement of funds under the Export Buyer's Credit Program, and (2) a copy of the 2013 administrative measures relating to the Program.  *Id.* at 11; *see also* PDM at 31-33, IDM at 27.

In response, the government of China once again did not provide additional documents or information regarding the 2013 revised administrative measures.  *See* Gov't of China Suppl. Quest. Resp. at 41-44.  Instead, the government of China stated that it did "not believe that the requested information [was] necessary to render a determination on this investigation."  *Id.* at 43. In addition, the government of China once again failed to provide a list of all partner /

---

[2]  Junbang did not submit any evidence or argument to Commerce regarding the amount of Junbang's total U.S. sales to the { } U.S. customers who certified non-use.

correspondent banks involved in the disbursement of Export Buyer's Credit Program funds, asserting instead that "a list of partner / correspondent bank is not necessary to either confirm or verify usage of this program" because the government of China previously had provided screenshots that "confirmed that none of the reported customers used this program." *Id.* at 41-44; *see also* IDM at 27. Instead of providing the additional information that Commerce explicitly had requested notwithstanding the prior submission, the government of China continued to claim that neither the respondents nor their customers had used the Program. IDM at 28 (citing Gov't of China Suppl. Quest. Resp. at 41-44).

III.    The Preliminary Determination

In December 2023, Commerce published the preliminary determination, *Certain Pea Protein from China*, 88 Fed. Reg. 87,403 (Dep't of Commerce Dec. 18, 2023) (P.R. 317), which adopted an accompanying Preliminary Decision Memorandum (PDM) (P.R. 303). Commerce explained that the Export Buyer's Credit Program is administered by state-owned banks, such as the Ex-Im Bank of China, which provide loans at preferential rates to customers for the purchase of exported goods from China. PDM at 33 (citing Gov't of China Initial Quest. Resp. Exs. II.B.7, II.B.9). Commerce preliminarily determined that significant gaps in the record existed with respect to this program because the government of China withheld requested information that significantly impeded the proceeding, and that an adverse inference was warranted pursuant to 19 U.S.C. § 1677e(b) due to the government of China's failure to cooperate to the best of its ability by withholding information within its control.

Commerce explained that the government of China's repeated failures to provide the necessary information prevented Commerce from fully verifying the Export Buyer's Credit Program, notwithstanding Junbang's claims of non-use. PDM at 34. By withholding requested information concerning the operation of the Export Buyer's Credit Program, the government of

China "impeded not only Commerce's ability to determine whether the provision of the credits constitutes a financial contribution and whether such credits are specific, but also Commerce's ability to reach a verifiable conclusion regarding usage of the program." *Id.* at 33. Although Junbang reported no receipt of benefits from the Export Buyer's Credit Program and submitted non-use certifications from some ({ } percent) of its customers, Commerce found that claims of non-use of this program were not verifiable absent the information requested from the government of China. PDM at 34; *see also* Junbang Initial Quest. Resp. Exs. 13-16 (providing certifications for only { } out of the 26 listed U.S. customers).

Despite lacking the information needed to verify non-use of the Export Buyer's Credit Program from the government of China, Commerce nonetheless considered whether information provided by Junbang was "sufficient to fill the gap of missing record information" caused by the government of China's failure to cooperate. *Id.* at 34. Commerce determined that the information provided by Junbang was insufficient to fill that gap because Junbang only provided non-use certifications from some ({ } percent) of its U.S. customers. *Id.* (citing Junbang Initial Quest. Resp. Exs. 13-16). Commerce concluded that this information on the record was insufficient to establish that *none* of Junbang's U.S. customers used the program and did not allow Commerce to fill the gaps created by the government of China in the record with respect to the claims of non-use. *Id.*

IV. The Final Determination

In case briefs addressing the potential application of adverse facts available (AFA) to the Export Buyer's Credit Program, the government of China and Junbang argued that Commerce improperly applied AFA and failed to consider available evidence of non-use in the preliminary determination. *See* IDM at 24-25 (citing Gov't of China Case Br. at 29-37 (Apr. 30, 2024) (P.R. 360); Junbang Case Br. at 2-7 (Apr. 30, 2024) (P.R. 362; C.R. 277)). In particular, the

government of China argued that it had cooperated fully and that Commerce's determination lacked substantial evidence. *Id.* Junbang argued that Commerce failed to provide Junbang with a statutorily required opportunity to remedy deficiencies, and Junbang further argued that the preliminarily selected AFA rate was excessive and discredited. *Id.* In contrast, defendant-intervenor PURIS Proteins (the petitioner) argued that Commerce's use of AFA is appropriate based upon non-cooperation by the government of China. *Id.* at 25-26 (citing PURIS Proteins Rebuttal Br. at 3-6 (May 8, 2024) (P.R. 370). Plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek did not submit any case briefs or make any argument before Commerce. *See* Index to Admin. Record, Nov. 25, 2024, ECF Nos. 27-1, 27-2.

In July 2024, Commerce published the final determination. *Final Determination*, 89 Fed. Reg. 55,557. Commerce continued to find it was unable to verify non-use of the Export Buyer's Credit Program by Junbang and its U.S. customers. IDM at 26-32. Commerce made this determination based on the government of China's refusal to provide necessary information that Commerce would be unable to obtain otherwise, and non-use certifications from a small fraction of Junbang's U.S. customers were not sufficient to fill the gap caused by the government of China's non-cooperation. *Id.* Accordingly, Commerce continued to apply adverse facts available to find the program countervailable. *Id.*

## SUMMARY OF THE ARGUMENT

The government of China did not cooperate to the best of its ability when it failed to provide information requested regarding the Export Buyer's Credit Program. As a result, Commerce was unable to verify Junbang's claims of non-use of the program. Junbang argues that it provided substantial evidence that neither Junbang nor *any* of its U.S. customers used the Export Buyer's Credit Program, but Junbang only provided non-use certifications from a small fraction ({  } percent) of its U.S. customers, and Commerce could not verify such information in

any event.  To be able to verify these non-use claims, Commerce must have a complete understanding of how the Program is administered, including an understanding of how the government of China uses intermediary banks to administer the subsidies at issue.  The government of China, however, refused to provide Commerce with any of the requested necessary information, leaving Commerce in the impossible position of looking for a "needle in a haystack" without even knowing what the needle looks like.  IDM at 27.  Additionally, Junbang's responses – which contained non-use certifications from only a small percentage of its U.S. customers – were inadequate to fill the record gaps resulting from the government of China's failure to cooperate to the best of its ability.  Under these circumstances, Commerce reasonably determined that it had an insufficient basis upon which to take further steps such as issuing supplemental questionnaires or attempting to verify the information provided.  Commerce reasonably applied adverse facts available to find the program countervailable because of the government of China's refusal to cooperate with the investigation.

Although the arguments on behalf of plaintiff Junbang in the opening brief are properly before the Court, the remaining claims in this case are waived.  Plaintiffs waived count III of the complaint, which pertains to a nominator and denominator calculation issue, by failing to address that in their opening brief.  Moreover, three plaintiffs (Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek) waived all their arguments because they did not submit a case brief or exhaust any arguments before Commerce.

<div align="center">ARGUMENT</div>

I.    Standard Of Review

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in

accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F. 3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "The specific factual findings on which [Commerce] relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" amounts to "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Substantial evidence is also "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [Commerce's] finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562-63 (Fed. Cir. 1984) (citation omitted). The Court may not overturn an agency determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007), and the Court will not substitute its judgment for that of Commerce in choosing between two fairly conflicting views, even though it could justifiably have made a different choice had the matter been before it *de novo*. *See Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006); *Timken Co. v. United States*, 699 F. Supp. 300, 306

(Ct. Int'l Trade 1988) (Court will not "weigh the adequate quality or quantity of the evidence for sufficiency").

## II.    Commerce Lawfully Determined That Junbang Benefitted From The Export Buyer's Credit Program

Commerce lawfully determined, through the application of an adverse inference in selecting from among the facts otherwise available, that the record does not support a finding of non-use of the Export Buyer's Credit Program. Junbang argues that Commerce's determination is unsupported by substantial evidence and is unlawful. Junbang Br. at 8-15. The record, however, demonstrates that Commerce twice requested information necessary for the investigation from the government of China. PDM at 31-33 (citing Gov't of China Initial Quest. at II-5-II-6; Gov't of China Suppl. Quest. at 11). Commerce could not obtain this information from any other source. IDM at 26-27. Instead of cooperating, the government of China twice refused to provide the requested information. *Id.* at 31-33 (citing Gov't of China Initial Quest. Resp. at 70-75, Exs. II.B.7-10; Gov't of China Suppl. Quest. Resp. at 41-44). Additionally, Junbang's provision of non-use certifications from approximately one-fourth ({  } percent) of its U.S. customers was not adequate to fill in the record gaps resulting from the government of China's failure to cooperate to the best of its ability. *Id.* (citing Junbang Initial Quest. Resp. Exs. 13-16; Gov't of China Suppl. Quest. Resp. at 43; Gov't of China Initial Quest. Resp. at 73). As a result of the government of China's non-cooperation, Commerce did not have a complete understanding of how the Export Buyer's Credit Program was administered, and thus could not verify whether Junbang or its U.S. customers benefited from the program. *Id.* Commerce explained in detail the information missing from the record, the necessity of the information, and how lack of that information affects Commerce's ability to verify non-use of the Program. Accordingly, substantial evidence supports Commerce's application of adverse facts available.

A.    Legal Framework

Commerce applies facts otherwise available to fill gaps in the record if "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(1), or if an interested party: (a) withholds information requested by Commerce; (b) fails to provide the information in the form or in the manner requested; (c) significantly impedes the proceedings; or (d) provides information that cannot be verified.  19 U.S.C. § 1677e(a)(2)(A)-(D).  During a countervailing duty proceeding, Commerce may select a rate with which to countervail a subsidy program by applying an adverse inference from among the facts otherwise available when Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with [its] request for information."  19 U.S.C. § 1677e(b).  When applying an adverse inference, Commerce may rely on information derived from any stage of the proceeding, including the petition, a final determination in the investigation, any previous review, or any other information placed on the record.  19 U.S.C. § 1677e(b); *see also* 19 C.F.R. § 351.308(c).

In countervailing duty proceedings, Commerce requires information from both the foreign government in question and the respondent foreign producers or exporters.  "Typically, foreign governments are in the best position to provide information regarding the administration of their alleged subsidy programs, including eligible recipients."  *Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1297 (Ct. Int'l Trade 2010), *aff'd in part, rev'd in part on other grounds*, 678 F.3d 1268 (Fed. Cir. 2012).  Commerce may use an adverse inference, even if doing so may "have collateral consequences for a cooperating party."  *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 287 F. Supp. 3d 1361, 1373 (Ct. Int'l Trade 2018) (citing *Mueller Comercial de Mexico, S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1236 (Fed. Cir. 2014)).  "Cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions," but

"this is not contrary to the statute or its purpose, nor is it inconsistent with this court's precedent." *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014). Therefore, Commerce may lawfully apply an adverse inference based upon the government of China's failure to provide requested information, even when a respondent has cooperated. *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010) (finding that a collateral impact on a cooperating party does not render the application of adverse inferences in a countervailing duty investigation improper); *Fine Furniture*, 748 F.3d at 1371-73 (affirming Commerce's application of adverse inferences when the government of China did not provide requested information despite the respondents' cooperation).

A party fails to cooperate to the best of its ability when it does not exert "*maximum effort* to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (emphasis added). To avoid the application of adverse facts available, respondents "conduct prompt, careful and comprehensive investigations of all relevant records that refer or relate to the imports in question." *Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373, 1379 (Fed. Cir. 2016) (citing *Nippon Steel Corp.*, 337 F.3d at 1382).

Specifically in the context of the Export Buyer's Credit Program, the Court has held that, "to apply an adverse inference that a cooperating party benefited from the [program] based on the [government's] failure to cooperate, Commerce must: (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establish how the withheld information creates this gap by explaining why the information the [government] refused to give was necessary to verify claims of non-use; and (3) show that only the withheld information can fill the gap by explaining why other information, on the record

or accessible by respondents, is insufficient or impossible to verify." *Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019) (citing *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 352 F. Supp. 3d 1316, 1326-27 (Ct. Int'l Trade 2018)).

B.    Commerce Lawfully Applied Facts Available With An Adverse Inference Regarding The Export Buyer's Credit Program Due To The Government Of China's Failure To Cooperate To The Best Of Its Ability

Junbang argues that Commerce erred in applying adverse facts available because there was no gap of information in the record, and Junbang corroborated its and its customers' non-use claims. Junbang Br. at 8-9. Junbang further asserts that Commerce ignored facts on the record and should have calculated the margin of the Export Buyer's Credit Program to account for Junbang and its customers' non-use claims. *Id.* at 11-14. Finally, Junbang argues that Commerce "cannot take adverse inferences and use adverse facts in calculating the value for the program" without issuing supplemental questionnaires about the program. *Id.* at 11-14. However, as set forth below, Commerce's determination is lawful, is supported by substantial evidence, and should be sustained.

1.    Information Withheld By The Government Of China Is Necessary To Verify Non-Use

Junbang argues that Commerce's determination is unlawful and unsupported by the record because Junbang provided all the information in its possession demonstrating non-use and fully cooperated. Junbang Br. at 8-9. This argument misses the point because Commerce did not make any finding that Junbang failed to cooperate to the best of its ability. Rather, the information that Commerce needed to verify claims of non-use was in the exclusive possession of the government of China, which withheld that information notwithstanding several requests for it. *See Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334, 1355 (Ct.

Int'l Trade 2016) ("[O]nly the government of China, and in particular the [China] Ex-Im [Bank],

could provide and verify the information needed to determine whether a benefit was conferred to

Respondents during the [period of review] from the EBC Program"); PDM at 34.  It is

undisputed that the government of China twice failed to provide the information requested, that

this information was necessary to Commerce's determination, and that an adverse inference was

warranted with respect to the government of China's failure to cooperate to the best of its ability.

Moreover, Commerce reasonably found that the limited information provided by Junbang was

insufficient to verify non-use under the circumstances.  IDM at 26, 30-32.

In particular, as Commerce explained, the government of China refused to provide the

twice-requested list of partner banks and the 2013 revised administrative measures for the

Program, which significantly changed certain provisions of the program from the 2000 measures.

IDM at 26-28 (citing Gov't of China Initial Quest. Resp. at 70-74, Exhibit II.B.7; Gov't of China

Suppl. Quest. Resp. at 41-44); PDM at 31-33.  In its initial questionnaire response, the

government of China provided the 2000 administrative measures.  IDM at 28 (citing Gov't of

China Initial Quest. Resp. Ex. II.B.7).  Record information obtained in a prior CVD proceeding,

however, indicated that the government of China revised the administrative measures in 2013.

IDM at 28; PDM at 31 (citing *Certain Amorphous Silica Fabric from China*, 82 Fed. Reg. 8,405

(Dep't of Commerce Jan. 25, 2017) (final CVD determination) (*Fabric from China*), and

accompanying IDM at 11-14).  Under these revised measures, the China Ex-Im Bank may

disburse export buyer's credits either directly *or through third-party partner or correspondent

banks*.  IDM at 26-27.  Therefore, having a complete list of the partner and correspondent banks

is necessary for Commerce to verify the claims of non-use.  *Id.*

Yet the government of China refused to provide this information, despite two separate requests from Commerce. In particular, Commerce twice requested a list of all partner / correspondent banks involved in the disbursement of funds under the credit program. IDM at 26. The government of China claimed that the question was not applicable. *Id.* at 23 (citing Gov't of China Initial Quest. Resp. at 70-75; Gov't of China November 20, 2023 Suppl. Quest. Resp. at 41-44). But as Commerce explained, this information is necessary for verification because the China Ex-Im Bank may disburse funds through third party banks. *Id.* at 26-27. Commerce elaborated that "to conduct verification of the customers without the information requested from the [government of China] would amount to looking for a needle in a haystack with the added uncertainty that Commerce might not even be able to identify the needle when it was found." *Id.* at 27.

Thus, the twice-requested list of correspondent banks was critical for Commerce to verify non-use of the Program given the complicated structure of the credit disbursements.[3] *Id.* at 26-27; PDM at 32. For Commerce to perform the verification steps to determine whether the manufacture, production, or export of respondent's merchandise has been subsidized and involved intermediary banks and indirect transactions from the China Ex-Im Bank to the exporter's customers, Commerce must know the names of the intermediary banks because "it

---

[3] The Export Buyer's Program Credit Program provides preferential financing to exporters through the China Ex-Im Bank by allowing the U.S. customers of Chinese exporters to obtain below market loans. PDM at 48-49. Thus, to be eligible for the program, the U.S. customer must have a contract with an eligible Chinese exporter. PDM 31-32. Then the U.S. customer may open loan accounts for disbursements through this program with either the China Ex-Im Bank or a correspondent bank, whereby the funds are first sent to the importer's account, and that these funds are then sent to the exporter's bank account, which could also be at the China Ex-Im Bank or the other banks associated with the program. PDM at 32.

would be their names, not the name 'China Ex-Im Bank,' that would appear in the subledgers of the U.S. customers if they received the credits."  PDM at 32.

Commerce also explained that attempting to verify non-use without such information would be unreasonably onerous.  Commerce would be required to comb through the business activities of the company respondent's customers without any guidance as to how to simplify the process or any guidance as to which loans or banks should be subject to scrutiny as part of a verification for each company.  IDM at 27.  And even a careful verification of Junbang's customers' non-use of this program without understanding the identity of these correspondent banks would be extremely difficult, if not impossible.  This is so, in part, because not only does Commerce not know the identities of these banks, but also "Junbang was not able to provide certifications for all of its importer customers."  *Id.* at 29-30.  Without the identities of the banks, Commerce could not by itself demonstrate that the U.S. customers did not use the program (*i.e.*, by examining whether there were any correspondent banks in the subledger).  *Id.* at 28-30. Accordingly, Commerce could not narrow down the company's lending to a subset of loans likely to be the export buyer's credits.  *Id.*

Notwithstanding the lack of knowledge into the correspondent banks, Commerce explained that even were it to attempt to verify Junbang's non-use of the Export Buyer's Credit Program by examining each loan received by Junbang's U.S. customers, it still could not verify which loans were normal, versus program, loans.  PDM at 33.  Because the government of China failed to provide Commerce with "all laws, regulations or governing documents or a list of partner / correspondent banks," Commerce explained that it cannot "differentiate ordinary commercial lending from [government of China]-supported credit in the books and records of the respondents' U.S. customers, or to differentiate disbursements of funds to the respondents

themselves pursuant to ordinary lending from disbursements pursuant to [government of China]-supported credit." PDM at 33; IDM at 27. Thus, in theory, companies could provide Commerce with incomplete Export Buyer Credit Program loan documentation without Commerce even understanding that the loan documentation was incomplete. IDM at 27.

Additionally, Commerce's typical non-use verification procedures, such as selecting specific entries from a subledger and requesting to see underlying documentation, would be of no value because this step might only confirm whether banks were correctly identified in the subledger, not necessarily whether those banks were correspondent banks participating in the Export Buyer Credit Program. IDM at 27. Junbang's and its customers' non-use claims could not be verified in a manner consistent with Commerce's verification methods because Commerce could not confirm usage or claimed non-use by examining books and records which can be reconciled to audited financial statements or other documents, such as tax returns. PDM at 31-34. And with the disbursement information only known by the originating bank, the China Ex-Im Bank, which is a government of China-controlled bank, without cooperation from the China Ex-Im Bank and / or the government of China, Commerce cannot know the banks that could have disbursed export buyer's credits to Junbang's customers. *Id.*; IDM at 26-28. As such, Commerce found that required missing information concerning the operation and administration of the Export Buyer's Credit Program is necessary because its absence from the record demonstrates why usage information provided by the government of China and Junbang cannot be verified and, thus, why there is a gap in the record concerning usage. *Id.* at 30-32.

In sum, Commerce was "unable to verify in a meaningful manner what little information there [was] on the record indicating non-use, pursuant to [19 U.S.C. § 1677e(a)(2)(D)], with the exporters, U.S. customers, or at the China Ex-Im Bank itself, given the refusal of the

[government of China] to provide the 2013 revisions and a complete list of correspondent/partner/intermediate banks." IDM at 27, 26-32. Furthermore, given the government of China's repeated withholding of necessary requested information, Junbang's unverifiable and limited evidence of non-use was insufficient to fill the gaps created by the government of China. *Id.* at 31-32. Thus, Commerce reasonably found that the application of AFA was warranted pursuant to 19 U.S.C. §§ 1677e(a)(2)(A)-(C) and (b)(1) because the government of China had not cooperated to the best of its ability in response to Commerce's specific information requests, and the respondents' attempts to cure record deficiencies resulting from the government of China's lack of full cooperation were insufficient. *Id.*

2.     Information Submitted By Junbang Was Insufficient To Verify Non-Use Of The Export Buyer's Credit Program

Junbang argues that Commerce ignored "ignored the affidavits and statements provided by plaintiff's Customers which established that they did not receive [Export Buyer's Credit Program] credits." Junbang Br. at 3, 9-11. Junbang argues that it submitted an "essentially complete" response to the questions Commerce asked. Junbang's Br. at 13. Junbang's response, however, only contains declarations for a small fraction ({  } percent) of its reported U.S. customers. *See* Junbang Initial Quest. Resp. Exs. 13-16. Junbang imaginatively characterizes its response to Commerce as "essentially complete," but providing ({  } percent) of the relevant information can hardly be called "complete" in any way, shape, or form.

Notwithstanding the shortcomings of Junbang's evidence, Commerce did not "ignore" it, as Junbang argues. Rather, Commerce explained that because Junbang was only able to provide certifications for some of its U.S. customers, Commerce was left with no "path towards further investigating, completely verifying (had Commerce exercised its discretion to do so), or otherwise ultimately determining the non-use of this program." IDM at 30. Commerce could

not rely on unverifiable assurances or the government of China's unsupported representations

that it has checked its records because Commerce has no way of verifying such statements. *Id.* at

29-32; *see Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*, No. 21-00088, 2022 Ct.

Int'l Trade LEXIS 106, at *14 n.5, 2022 WL 4180886, at *6 n.5 (Ct. Int'l Trade Sept. 13, 2022)

(Commerce "understandably doesn't take the Chinese government's representations on faith.").

Rather, the government of China must provide Commerce with the information and

documentation that would allow Commerce to fully examine its claims of non-use. *Id*.

Nonetheless, when a respondent voluntarily submits the full universe of its U.S.

customers certifications of non-use, Commerce may take the additional steps toward possible

verification despite the government of China's continued refusal to provide certain requested

information. *Id.* at 29-30 (explaining that "Commerce has acted on such voluntarily submitted

information only where a respondent submitted such certifications from all of its importer

customers (indicating cooperation from the full universe of respondent's customers such that

subsequent loan questionnaires and/or verification could reasonably confirm non-use of the

program for that respondent despite the [government of China's] refusal to provide certain

information)"). Here, however, Junbang failed to submit the full universe of non-use

certifications and instead submitted non-use certificates from { } percent of its customers.

Therefore, Commerce reasonably declined to take additional steps towards possible verification.

In similar circumstances, this Court has sustained Commerce's decision not to further

verify a respondent's incomplete information. This Court has acknowledged that Commerce's

practice of finding partial certifications insufficient to verify non-use of the EBC program is

"consistent with the Court's treatment of incomplete certifications." *Cooper (Kunshan) Tire Co.,*

*Ltd. v. United States*, 610 F. Supp. 3d 1287, 1318 (Ct. Int'l Trade 2022); *see also Baroque*

*Timber Indus. (Zhongshan) Co. v. United States*, No. 22-00210, 2025 Ct. Intl. Trade LEXIS 36, at \*48-49, 2025 WL 999962 (Ct. Int'l Trade Apr. 3, 2025) ("The court concludes also that Commerce properly defined the gap in the record created by the [government of China's] withholding of requested information and that the [government of China] refused to provide this information. Commerce explained also that only the withheld information can fill the gap because the ancillary documents and Baroque's partial non-use certifications are insufficient or impossible to verify.").

Because Junbang provided certifications for only a small fraction of its U.S. customers, "indicating that some of its U.S. customers would be unwilling to cooperate with requests for information from Commerce," Commerce had an insufficient basis to take further steps – such as issuing supplemental questions. IDM at 30. As such, even if Commerce had exercised its discretion to attempt verification, the provided partial information for non-use did not leave Commerce with a productive path towards further investigating, completely verifying, or otherwise ultimately determining the non-use of this program. *Id.* Accordingly, Commerce thoroughly explained that because of the program's complexities, incomplete customer certifications without necessary information that only the government of China could provide do not provide a record basis to support non-use, and there is thus a gap of missing information in the record to support non-use. *Id.* at 26-32.

Junbang asserts that Commerce's determination "ignored case law which was directly on point." *See* Junbang Br. at 9-10 (citing *Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024); *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023); *Risen Energy Co. v. United States*, 570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022)). However, these cases are distinguishable in key respects.

In *Dalian*, both respondents (Ancientree and Meisen) submitted a complete set of non-use certifications and Ancientree also "reported loan information for fifteen of its twenty-seven unaffiliated U.S. customers, which, according to the company, represented approximately 90% of its U.S. sales both by volume and by value during the period of investigation." 719 F. Supp. 3d at 1329 (noting that "of the twelve U.S. companies whose loan information Ancientree failed to report, one had gone out of business" while the other[s] represented approximately 10% of its U.S. sales both by volume and value, Ancientree stated that despite its efforts, it could not reach, or could not convince, those companies to provide the loan information that Commerce requested); *see also Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110, 2023 Ct. Intl. Trade LEXIS 70, at *24-25, 2023 WL 3222683, at *8 (Ct. Int'l Trade 2023) (sustaining "Commerce's use of adverse facts available to find that [Dalian] Meisen used and benefitted from the Export Buyer's Credit Program" given Meisen's failure to provide compete and verifiable information requested in the supplemental Export Buyer's Credit Program questionnaires)).  In contrast, here, Commerce considered whether any available information provided by Junbang was sufficient to fill the gap of missing record information in considering claims of non-use for the Export Buyer's Credit Program.  However, Junbang provided non-use certifications for only a small minority of its U.S. customers and did not provide any evidence or argument regarding the amount of U.S. sales for those customers by either volume or value. IDM at 30 (citing Junbang Initial Quest. Resp. Exs. 13-16).  And more fundamentally as detailed above, "the information could not be verified," so "Commerce may not rely on it when making its determination."  *See Dalian*, 719 F. Supp. 3d at 1337; IDM at 26-36.

Moreover, *Risen* is inapposite.  Risen provided non-use certifications from all but one of its U.S. customers along with complete financial information for U.S. customers that represented

95 percent of Risen's U.S. sales. Based upon this record, the Court "concluded that Risen had provided sufficient information from its customers to potentially eliminate any gap in the record caused by the [government of China's] non-compliance with Commerce's questionnaire." *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1340 (Ct. Int'l Trade 2023) (citing *Risen Energy Co. v. United States*, 2023 Ct. Int'l Trade LEXIS 52, *6-7, 13-14 (Ct. Int'l Trade 2023) (noting that "JA Solar provided complete information for its sole [U.S. customer]" and Risen provided non-use certificates for all but one of its U.S. customers, and that while Risen had only provided the financial information requested by Commerce for six of its twelve U.S. customers, the "missing financial data from roughly 5% of sales involved smaller importers")). In contrast, here, Junbang did not make a similar showing regarding the volume of impacted sales and only provided certifications for {  } percent of its U.S. customers, indicating many of its customers would be unwilling to submit the requisite financial data to establish non-use as compared to the nearly complete universe of U.S. sales accounted for in *Risen*.

Thus, without the necessary information requested, Commerce was unable to verify in a meaningful manner the information provided on the record. IDM at 26-36. Given Junbang failed to establish its or its customers non-use of the program, Commerce's application of AFA was supported by the record and in accordance with law.

       3.     Commerce Was Not Obligated To Provide Junbang With An Opportunity To "Remedy" Its Response That Was Insufficient To Fill The Gap

Junbang argues that Commerce was required to identify deficiencies in its response and allow it an opportunity to remedy the deficiency. *See* Junbang Br. at 11-13. Similarly, Junbang asserts that Commerce had no basis to apply "adverse facts" to it. *See* Junbang Br. at 8-9. These arguments misapprehend the law and the posture of this case. Here, as explained above, the necessary information regarding the Export Buyer's Credit Program was possessed by the

government of China – not Junbang – and it is the government of China that failed to provide the requested information and act to the best of its ability.  Section 1677m(d) requires that Commerce provide the "person submitting the [deficient] response . . . an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  Commerce provided the party submitting the deficient response – the government of China – a second opportunity to remedy its responses.  Gov't of China Suppl. Quest. at 11; *see also* Gov't of China Initial Quest. at 70-75, II-5-II-6.  The government of China elected not to do so.  Gov't of China Suppl. Quest. Resp. at 41-44; *see also* Gov't of China Initial Quest. Resp. at 70-75, Exs. II.B.7-10.  Thus, Commerce appropriately based its determination with respect to the Export Buyer's Credit Program on AFA.

The "statute does not require that Commerce ask the *respondents* for supplemental information due to the [*government of China's*] non-cooperation."  *See Cooper Tire*, 610 F. Supp. 3d at 1317.  Therefore, Commerce had no obligation to send questionnaires to respondents requesting comprehensive non-use certifications before making an adverse inference, because it is "bas[ing] its application of [an adverse inference] on the [government of China's] noncooperation and not on any need for certifications from customers to verify the [Export Buyer's Credit Program] in the first place."  *See id.*; *see also Dalian*, 719 F. Supp. 3d at 1337 (observing that "the Federal Circuit has upheld the imposition of adverse inferences against a cooperating Chinese respondent where the [government of China] has failed to cooperate with Commerce's requests for information in a countervailing duty proceeding, under the theory that 'a remedy that collaterally reaches [the exporter] has the potential to encourage the government of China to cooperate so as not to hurt its overall industry.'") (quoting *Fine Furniture*, 748 F.3d at 1373).  Junbang's statutory argument rests upon the assumption that Commerce found that

Junbang failed to cooperate, but the record contains no such finding by Commerce, and Junbang cites to none.

Finally, while Junbang notes that Commerce issued a supplemental questionnaire to Yantai Oriental following the submission of its non-use certifications, Commerce did so there because Yantai Oriental submitted a *complete* set of non-use certifications for *all* of its U.S. customers. IDM at 31. Thus, Commerce had a basis to inquire further of Yantai Oriental; however, in Yantai Oriental's response to Commerce's request for additional loan information, "Yantai Oriental only provided some financial and loan information for a few of its customers, but not complete information requested by Commerce for all of its customers." *Id.* Accordingly, Commerce found that Yantai Oriental's incomplete response was insufficient to fill the gaps in the record caused by the government of China's non-cooperation and withholding of information. *Id.* In contrast, Junbang did not come anywhere close to submitting non-use certifications for all of its U.S. customers, as it only did so for { } percent of them. Junbang Initial Quest. Resp. Exs. 13-16.

In sum, the government of China's failure to provide requested information to Commerce resulted in a gap in the record concerning the respondents' usage of the Export Buyer's Credit Program, which both respondents failed to fill. IDM at 31-32. As Commerce explained, this gap prevents complete and effective verification of the respondents' customers certifications of non-use. *Id.* at 30. Therefore, because of the government's failure to provide information about the program, Commerce's limited understanding of the operation of the program did not permit Commerce to verify non-use, even with incomplete and unverifiable customer declarations.

Accordingly, Commerce appropriately relied on adverse facts available to determine that the record does not support a finding of non-use of the Export Buyer's Credit Program because

government of China did not cooperate to the best of its ability. This lack of cooperation by the government of China created a gap in the record and directly led to Commerce's inability to verify whether the program was used by Junbang and its U.S. customers. Commerce reasonably determined that Junbang's factual submission was insufficient to fill the resulting gap. Under these circumstances, Commerce's determination to rely upon AFA is lawful and is supported by substantial evidence.

III.    The Remaining Claims In This Case Are Waived

Plaintiffs have waived count III of the complaint. *See* Compl. ¶¶ 27-29, Oct. 22, 2024, ECF No. 13. Count III alleged that Commerce used the wrong denominator for certain programs, selecting benefits from one period of time and the sales for a different period of time. *Id.* ¶ 28. Plaintiffs' opening brief makes no mention, let alone develops any argument, concerning this issue. Therefore, count III is waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."); *Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350, 1371 n.7 (Ct. Int'l Trade 2020) (holding claim not addressed in opening brief is waived).

Moreover, three of the plaintiffs (Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek) did not file any case briefs, did not file any letters in lieu of a case brief, and did not exhaust any arguments before Commerce. *See* Index to Admin. Record, Nov. 25, 2024, ECF Nos. 27-1, 27-2. Accordingly, all claims by these plaintiffs, including any claims for relief separate from Junbang, are waived.[4]

_____

[4]  In addition, none of these three plaintiffs (Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek) qualifies as a "party to the proceeding" under 19 U.S.C. § 1516a(b) and 28 U.S.C. § 2631(c), because they did not engage in "participation that … provide[d] Commerce

The exhaustion doctrine is rooted in two sources of law that are relevant here:  (1) a statute, 28 U.S.C. § 2637(d), which applies to all antidumping and countervailing duty proceedings; and (2) a regulation, 19 C.F.R. § 351.309(c)(2), which applies to case briefs in CVD investigations and other proceedings.  *See* 19 C.F.R. § 351.309(b)(1)-(2).  Here, the statutory and regulatory exhaustion requirements provide two independent grounds for the Court to find that plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek have waived all of their arguments in this case.

The statute provides that the Court "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping and countervailing duty determinations."  28 U.S.C. § 2637(d).  The statute "is not absolute" and has left the door open for courts to fashion limited exceptions.  *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).  The Court has recognized limited exceptions where exhaustion would have been "futile" or the matter is a "pure question of law," *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013), and where a party "had no opportunity to raise the issue before the agency," *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013), because, in the parlance of the statute, "requir[ing] the exhaustion of administrative remedies" in these circumstances would not be "appropriate." 28 U.S.C. § 2637(d).  Nevertheless, this Court "generally takes a 'strict view' of the requirement

---

with notice of a party's concerns."  *See Gov't of Canada v. United States*, 686 F. Supp. 3d 1320, 1327-28 (Ct. Int'l Trade 2024) (deciding "party to the proceeding" issue in the context of motions to intervene as plaintiffs).  Aside from routine entries of appearance and applications for access to the Administrative Protective Order, these plaintiffs only submitted responses to Commerce's Q&V questionnaire.  Linyi Yuwang Q&V Quest. Resp. (P.R. 58, C.R. 24); Shandong Yuwang Q&V Quest. Resp. (P.R. 59, C.R. 25); Fenchem Biotek Q&V Quest. Resp. (P.R. 84, C.R. 33); Index to Admin. Record, Nov. 25, 2024, ECF Nos. 27-1, 27-2.  These plaintiffs did not articulate any substantive concern or make any argument before Commerce.

that parties exhaust their administrative remedies before . . . Commerce in trade cases." *Corus Staal*, 502 F.3d at 1379.

The regulation requires that a "case brief *must present all arguments* that continue in the submitter's view to be relevant to the Secretary's final determination or final results." 19 C.F.R. § 351.309(c)(2) (emphasis supplied). The Federal Circuit has held that "Commerce's regulations specifically address the exhaustion requirement … and require a challenger to submit a case brief to Commerce that contains all of the arguments that the submitter deems relevant, 'including any arguments presented before the date of publication of the preliminary determination or preliminary results.'" *Corus Staal*, 502 F.3d at 1379 (quoting 19 C.F.R. § 351.309(c)(2)); *accord Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) ("Commerce regulations require the presentation of all issues and arguments in a party's administrative case brief."). In short, "parties are procedurally required to raise their issue before Commerce at the time Commerce is addressing the issue." *Dorbest*, 604 F.3d at 1375 (citation, internal quotation marks, brackets omitted).

The Federal Circuit has explained further that "[t]he exhaustion requirement in this [regulatory] context is therefore not simply a creature of court decision, as is sometimes the case, but is a requirement explicitly imposed by the agency as a prerequisite to judicial review." *Dorbest*, 604 F.3d at 1375; *see also Fuwei Films (Shandong) Co. v. United States*, 791 F. Supp. 2d 1381, 1385 (Ct. Int'l Trade 2011) (Commerce's regulation "carries the force of law and the court cannot simply ignore it."). When a party fails to raise an issue or argument in its case brief before Commerce, in violation of an "explicitly imposed . . . prerequisite to judicial review," then the party has "waived" the argument and is "precluded from raising" it in this Court. *Dorbest*, 604 F.3d at 1375. A violation of Commerce's regulation, therefore, supplies an

independent ground for finding that an argument has been waived on exhaustion grounds. *Id.* (holding "that Dorbest's failure to raise its issue in its administrative case brief constituted a failure to exhaust administrative remedies" in violation of regulatory exhaustion requirement).

Here, plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek tacitly concede, as they must, that they did not file case briefs before Commerce. *See* Compl. ¶ 10 (alleging that plaintiff Junbang and members of the U.S. domestic industry "filed administrative case briefs with … Commerce challenging the preliminary results," but making no such allegation with respect to the three other plaintiffs); *see also* Index to Admin. Record, Nov. 25, 2024, ECF Nos. 27-1, 27-2.  Thus, plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek violated the "explicitly imposed . . . prerequisite to judicial review" set forth in 19 C.F.R. § 351.309(c)(2), and, therefore, are "precluded from raising" any and all arguments in this Court. *See Dorbest*, 604 F.3d at 1375.  It also is "appropriate" for the Court to "require the exhaustion of administrative remedies" by these three plaintiffs pursuant to 28 U.S.C. § 2637(d).  Nothing prevented those three plaintiffs from including their arguments in case briefs before Commerce. There is no reason for the Court to excuse their manifest failure to exhaust.  For these independent reasons, all claims by plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek are waived.[5]  *See Dorbest*, 604 F.3d at 1375.

<div align="center">CONCLUSION</div>

For these reasons, we respectfully request that the Court deny plaintiffs' motion for judgment upon the agency record and sustain Commerce's final determination in the countervailing duty investigation of pea protein from China.

---

[5]  Additionally, in their opening brief, plaintiffs do not challenge Commerce's calculation of the all-others rate that is applicable to plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek.  Accordingly, any such argument regarding the all-others rate is waived for this additional, independent reason.  *See SmithKline Beecham*, 439 F.3d at 1319.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

 s/ Franklin E. White, Jr., by Tara K. Hogan
FRANKLIN E. WHITE, JR.
Assistant Director

 s/ Douglas Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9303

Attorneys for Defendant

Of Counsel:

PAUL THORNTON
Attorney
Office of the Chief Counsel
    for Trade Enforcement & Compliance
Department of Commerce

May 13, 2025

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International

Trade Standard Chambers Procedures § 2(B)(1) and contains 8,881 words, excluding the parts of

the brief exempted from the word limitation.  In preparing this certificate of compliance, I have

relied upon the word count function of the word processing system used to prepare the brief.

<u>  s/ Douglas G. Edelschick     </u>