UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| **ZHAOYUAN JUNBANG TRADING CO., LTD., ET AL.,** | |
| **Plaintiffs,** | |
| **and** | |
| **NURA USA, LLC,** | |
| **Plaintiff-Intervenor,** | |
| **v.** | Court No. 24-00180 |
| **UNITED STATES,** | **PUBLIC VERSION** |
| **Defendant,** | |
| **and** | **Business Proprietary Information Deleted from Pages 7, 17, 18, 20, 22 and 26.** |
| **PURIS PROTEINS, LLC, DOING BUSINESS AS PURIS,** | |
| **Defendant-Intervenor.** | |

DEFENDANT-INTERVENOR'S RESPONSE BRIEF

Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
Scott D. McBride, Esq.
THE BRISTOL GROUP PLLC
1707 L Street NW
Suite 1050
Washington, DC 20036
Tel:  (202) 991-2701

Date:  June 27, 2025                    *Counsel to Defendant-Intervenor PURIS*

PUBLIC VERSION

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

RULE 56.2 STATEMENT ................................................................................................ 1

   1.   The Administrative Determination Under Review ............................................. 1

   2.   The Issues Presented and Reasons Supporting Commerce's Determination..................... 1

      A.   Whether Commerce's decision to countervail the Export Buyer's Credit Program ("EBCP") in the *Final Determination* based upon facts available with an adverse inference is supported by substantial evidence and otherwise in accordance with law? 1

      B.   Whether Plaintiffs have waived their ability to litigate Count III of the Complaint because they did not address that issue in their brief? .................................................. 2

      C.   Whether Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek lack standing to challenge the *Final Determination* before this Court under 19 U.S.C. § 1516a(a)(2)(A) and otherwise failed to exhaust their administrative remedies in the CVD investigation under 28 U.S.C. § 2637(d) and 19 C.F.R § 351.309(c)(2)............................................. 2

JURISDICTION ............................................................................................................... 3

STANDARD OF REVIEW ............................................................................................... 3

STATEMENT OF FACTS ................................................................................................ 4

   1.   The Petition, Initiation, and Questionnaire Responses ..................................... 4

   2.   The Preliminary Determination ........................................................................ 8

   3.   The Administrative Case Briefs and the Final Determination.......................... 9

SUMMARY OF THE ARGUMENT ............................................................................... 11

ARGUMENT.................................................................................................................... 12

   I.   COMMERCE'S DETERMINATION THAT JUNBANG BENEFITTED FROM THE EBCP IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW.............................................................................. 12

      A.   Legal Framework ........................................................................................ 13

B.      Commerce's Determination to Apply Adverse Facts Available to the EBCP Is
        Supported By Substantial Evidence and is Otherwise in Accordance with Law...16

    1.   Junbang's Submissions Did Not Fill the Gap in the Record to Prove Non-Use of
         the EBCP by Junbang and Its U.S. Customers ...................................................... 16

    2.   Commerce Was Under No Lawful Obligation to Either Provide Junbang With An
         Opportunity to Supplement the Record or Reduce the CVD Rate Applied to
         Junbang's Exported Merchandise ......................................................................... 23

II.   PLAINTIFFS HAVE WAIVED COUNT III OF THEIR COMPLAINT ................... 27

III.  LINYI YUWANG, SHANDONG YUWANG, AND FENCHEM BIOTEK LACK
      STANDING TO CHALLENGE THE *FINAL DETERMINATION* AND FAILED TO
      EXHAUST THEIR ADMINISTRATIVE REMEDIES ............................................... 27

CONCLUSION ......................................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*American Grape Growers v. United States*,
 604 F. Supp. 1245 (Ct. Int'l Trade 1985) ............................................................... 29

*Atl. Sugar Ltd. v. United States*,
 744 F.2d 1556 (Fed. Cir. 1984).............................................................................. 4

*Baroque Timber Industries (Zhongshan) Co. v. United States*,
 No. 22-00210, 2025 WL 999962 (Ct. Int'l Trade Apr. 3, 2025) ............................ 20

*Changzhou Trina Solar Energy Co. v. United States*,
 255 F. Supp. 3d 1312 (Ct. Int'l Trade 2017) .......................................................... 20

*Changzhou Trina Solar Energy Co. v. United States*,
 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) .......................................................... 15

*Clearon Corp. v. United States*,
 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) ................................................... 15, 20

*Cleo In. v. United States*,
 501 F.3d 1291 (Fed. Cir. 2007)................................................................................ 3

*Consolidated Edison v. NLRB*,
 305 U.S. 197 (1938)................................................................................................. 3

*Consolo v. Fed. Mar. Comm'n*,
 383 U.S. 607 (1966)................................................................................................. 3

*Cooper Kunshan Tire Co., Ltd. v. United States*,
 610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) .................................................. passim

*Cross Med. Prods. Inc. v. Medtronic Sofamor Danek, Inc.*,
 424 F.3d 1293 (Fed. Cir. 2005)............................................................................... 27

*Dalian Meisen Woodworking Co., Ltd. v. United States,*
 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024), .................................................. passim

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
 No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade 2023) ........................... 21, 25, 26

*Dongkuk Steel Mill Co., Ltd. v. United States*,
 567 F. Supp. 3d 1359 (Ct. Int'l Trade 2022) .......................................................... 29

*Dorbest Ltd. v. United States*,
    604 F.3d 1363 (Fed. Cir. 2010)...................................................................................... 30

*Echjay Forgings Private Ltd. v. United States*,
    475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020) .............................................................. 27

*Fine Furniture (Shanghai) Ltd. v. United States*,
    748 F.3d 1365 (Fed. Cir. 2014)............................................................................. 15, 17

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
    394 F.3d 1368 (Fed. Cir. 2005)...................................................................................... 27

*Fujitsu Gen'l Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996)........................................................................................ 3

*Fuwei Films (Shandong) Co. v. United States*,
    791 F. Supp. 2d 1381 (Ct. Int'l Trade 2011) .............................................................. 30

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................................................ 4

*Gov't of Canada v. United States*,
    686 F. Supp. 3d 1320 (Ct Int'l Trade 2024) .............................................................. 28

*Jiangsu Zhongji Lamination Materials v. United States*,
    405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) ....................................................... 15, 17

*Laclede Steel Co. v. United States*,
    No. 96-1029, 1996 WL 384010 (Fed. Cir. July 8, 1996)............................................ 28

*Matsushita Elec. Indus. Co. v. United States*,
    750 F.2d 927 (Fed. Cir. 1984)........................................................................................ 3

*Mitsubishi Heavy Indus., Ltd. v. United States*,
    275 F.3d 1056 (Fed. Cir. 2001)...................................................................................... 4

*Nan Ya Plastics Corp. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016)............................................................................. 19, 24

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006)...................................................................................... 4

*PAM, S.p.A v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009)................................................................................. 3, 4

*Pay Less Here, LLC v. U.S. Int'l Trade Comm.*,
No. 24-00152, 2025 WL 1165274 (Ct. Int'l Trade Apr. 22, 2025) ......................................... 28

*QVD Food Co. v. United States*,
658 F.3d 1318 (Fed. Cir. 2011) ........................................................................................... 19, 24

*Risen Energy Co. v United States*,
570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) .............................................................. 19, 20, 22

*Risen Energy Co. v. United States*,
665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) .............................................................. 20, 21, 22

*Risen Energy Co., Ltd. v. United States*,
No. 20-03912, 2023 WL 2890019 (Ct. Int'l Trade Apr. 11, 2023) ......................................... 22

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ................................................................................................. 27

*Timken Co. v. United States*,
699 F. Supp. 300 (Ct. Int'l Trade 1988) ..................................................................................... 4

*United States v. Eurodif S.A.*,
555 U.S. 305, 316 n.6 (2009) ....................................................................................................... 3

*Universal Camera Corp. v. N.L.R.B*,
340 U.S. 474 (1951) ...................................................................................................................... 4

**STATUTES**

19 U.S.C. § 1516a(a)(2)(A) ............................................................................................... passim

19 U.S.C. § 1516a(a)(2)(B)(i) ............................................................................................... 3, 28

19 U.S.C. § 1516a(b)(1)(B) ....................................................................................................... 3

19 U.S.C. § 1677e(a) and (b) ................................................................................... 2, 9, 13, 17

19 U.S.C. § 1677e(a)(1) and §§ 1677e(a)(2)(A), (B) and (C) ...................................................... 14

19 U.S.C. § 1677e(b) ............................................................................................................... 14

19 U.S.C. § 1677e(d) ........................................................................................................ 11, 27

19 U.S.C. § 1677m(d) ....................................................................................................... passim

19 U.S.C. § 1677m(i)(1) .................................................................................................... 13, 22

**PUBLIC VERSION**

28 U.S.C. § 1581(c) ............................................................................................... 3

28 U.S.C. § 2637(d) ..................................................................................... passim

**REGULATIONS**

19 C.F.R. § 351.102(b)(36)................................................................................... 28

19 C.F.R § 351.309(c)(2) .................................................................................. passim

**ADMINISTRATIVE DETERMINATIONS & REGULATIONS**

*Certain Amorphous Silica Fabric from China*, 82 Fed. Reg. 8,405 (Dep't of Commerce Jan. 25, 2017) (final CVD determ.), and accompanying Issues and Decision Memorandum at 11-14 .. 8

*Certain Pea Protein from China*, 88 Fed. Reg. 52,116 (Dep't of Commerce Aug. 7, 2023) (initiation of CVD investigation) ................................................................................ 5

*Certain Pea Protein from China*, 88 Fed. Reg. 87,403 (Dep't of Commerce Dec. 18, 2023) (prelim. determ.), accompanying Preliminary Decision Memorandum ..................................... 8

*Certain Pea Protein from China*, 89 Fed. Reg. 55,557 (Dep't of Commerce July 5, 2024) (final CVD determ.), and accompanying Issues and Decision Memorandum (June 27, 2024). . passim

*Certain Steel Racks and Parts,* 88 Fed. Reg. 21,177 (Apr. 10, 2023) (final CVD determ.) and accompanying IDM. .............................................................................................. 19

## RULE 56.2 STATEMENT

Defendant-Intervenor PURIS Proteins LLC d/b/a PURIS ("PURIS"), petitioner in the underlying investigation, respectfully submits this response to the Rule 56.2 motion for judgment on the agency record (the "Motion") filed in this case by plaintiffs Zhaoyuan Junbang Trading Co., Ltd. ("Junbang"), Linyi Yuwang Vegetable Protein Co., Ltd. ("Linyi Yuwang"), Shandong Yuwang Ecological Food Industry Co., Ltd. ("Shandong Yuwang"), and Fenchem Biotek Ltd. ("Fenchem Biotek"), ECF No. 34 ("Pls' Br.").

### 1.  The Administrative Determination Under Review

The administrative determination under review is the final determination in the U.S. Department of Commerce's ("Commerce") countervailing duty ("CVD") investigation of certain pea protein from the People's Republic of China ("China"), covering the period of investigation of January 1, 2022 through December 31, 2022.  *Certain Pea Protein from China*, 89 Fed. Reg. 55,557 (Dep't of Commerce July 5, 2024) (final CVD determ.), P.R. 385 ("*Final Determination*"), and accompanying Issues and Decision Memorandum (June 27, 2024), P.R. 376 ("IDM").[1]

### 2.  The Issues Presented and Reasons Supporting Commerce's Determination

**A.  Whether Commerce's decision to countervail the Export Buyer's Credit Program ("EBCP") in the *Final Determination* based upon facts available with an adverse inference is supported by substantial evidence and otherwise in accordance with law?**

**Yes.**  Commerce correctly determined that the Government of China ("GOC") failed to act to the best of its ability in providing necessary information that would allow Commerce to

---

[1] Public documents in the administrative record are designated as "P.R." and confidential documents are designated as "C.R."  Business proprietary information from confidential documents is designated using square brackets and is redacted from the public version of the brief, in accordance with Rule 5(g) of the Court's Rules.

verify the use or nonuse of export buyer's credits under the EBCP by the plaintiffs' U.S.

customers, in accordance with 19 U.S.C. §§ 1677e(a) and (b).  Furthermore, Commerce correctly

determined that the few U.S. customer non-use affidavits placed on the record by Junbang did

not fill the gap of missing information created by the GOC's failure to provide necessary

information with respect to the application of the EBCP.  Accordingly, Commerce's

determination to countervail the EBCP in the *Final Determination* using facts available with

adverse inferences ("AFA") is supported by substantial evidence and is otherwise in accordance

with law.

> **B.  Whether Plaintiffs have waived their ability to litigate Count III of the Complaint because they did not address that issue in their brief?**

**Yes.**  Count III of the Complaint alleges that Commerce used the wrong denominator for

certain programs.  *See* Compl. ¶¶ 27–29.  However, Plaintiffs' brief makes no reference to this

claim and provides no argument in support of the allegation.  Accordingly, plaintiffs have

waived their ability to raise this issue on appeal.

> **C.  Whether Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek lack standing to challenge the *Final Determination* before this Court under 19 U.S.C. § 1516a(a)(2)(A) and otherwise failed to exhaust their administrative remedies in the CVD investigation under 28 U.S.C. § 2637(d) and 19 C.F.R § 351.309(c)(2)?**

**Yes.**  Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek raised no issues or

provided any arguments to Commerce in the CVD investigation at issue in this case.  Their only

submissions were notices of appearance and other procedural documents at the beginning of the

investigation.  Accordingly, all three plaintiffs were not "parties to the proceeding" and lack

standing to challenge the *Final Determination* before this Court under 19 U.S.C.

§ 1516a(a)(2)(A).  Furthermore, each failed to exhaust its administrative remedies in the CVD

investigation and therefore also waived the claims raised in the Plaintiffs' brief under 28 U.S.C. § 2637(d) and 19 C.F.R § 351.309(c)(2).

## JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under 19 U.S.C. §§ 1516a(a)(2)(A) and (a)(2)(B)(i).

## STANDARD OF REVIEW

In reviewing Commerce's antidumping duty ("AD") or CVD determinations, "the Court of International Trade must sustain "any determination, finding or conclusion found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen'l Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984); *PAM, S.p.A v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). "The specific factual findings" on which Commerce relies "in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

Under the substantial evidence standard, a Court may not overturn an agency determination "simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo In. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007). As the Supreme Court has held, substantial evidence is "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent" an

agency determination from being "supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Accordingly, the CIT has explained that it will not substitute its judgment for that of Commerce in choosing between two fairly conflicting interpretations of the facts on the record. *See Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988); *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006). Further, the Court of Appeals for the Federal Circuit ("Federal Circuit") has held that "substantial evidence on the record means 'more than a mere scintilla' and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if some evidence on the record detracts from the agency's ultimate determination. *Atl. Sugar Ltd. v. United States*, 744 F.2d 1556, 1562-63 (Fed. Cir. 1984) (citing *Universal Camera Corp. v. N.L.R.B*, 340 U.S. 474, 477 (1951)); *PAM S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). As the Federal Circuit has held, the substantial evidence standard is a "high barrier" for a challenging party to overcome. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citing *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001).

## STATEMENT OF FACTS

### 1. The Petition, Initiation, and Questionnaire Responses

On July 12, 2023, PURIS, an American producer of high protein content pea protein, filed a CVD petition (the "Petition") with Commerce, alleging that the GOC was unfairly subsidizing Chinese producers and exporters of pea protein sold to the United States.[2] Petition, Vol III, P.R. 5–19; C.R. 5–19. One of the programs identified in the CVD petition was the

---

[2] PURIS also filed an antidumping petition, which resulted in an affirmative determination and imposition of an order.

PUBLIC VERSION

EBCP.  *Id.* at 26.  The Petition explained that, under the EBCP, China's Export-Import Bank

("CEXIM") provides loans to foreign companies in yuan and foreign currencies to import

Chinese products, technology and services.  *Id.* (citing to the CEXIM's 2022 Annual Report at

43, attached to the Petition as Exhibit III-34), P.R. 5; C.R. 5 (cited sources at P.R. 10; C.R. 10).

In August 2023, Commerce initiated a CVD investigation of pea protein from China

covering multiple subsidies, including the EBCP.  CVD Initiation Checklist at 13–14, P.R. 48;

C.R. 23, *Certain Pea Protein from China*, 88 Fed. Reg. 52,116 (Dep't of Commerce Aug. 7,

2023) (initiation of CVD investigation), P.R. 49.  Soon afterward, Commerce selected the two

"mandatory" respondents for individual examination in the investigation, Junbang and Yantai

Oriental Protein Technology Co., Ltd. ("Yantai Oriental").  Respondent Selection Memo at 4–5

(Dep't of Commerce August 24, 2023), P.R. 95; C.R. 37.

Over the months that followed, Commerce issued questionnaires and supplemental

questionnaires to the interested parties, including Junbang and the GOC.  In response to a

question about the EBCP in the initial questionnaire, the GOC stated that to "the best of" its

knowledge, "neither the respondents nor the respondents' U.S. customers applied for, used, or

benefited" from the program during the period of investigation ("POI").  GOC Initial

Questionnaire at 70–75 (Oct. 18, 2023), P.R 165–220; C.R. 89–130.

The GOC also stated that "to show how the Export Buyer's Credit loan program . . .

operates in general," it was providing a copy of the document titled "Administrative Measures of

Export Buyer's Credit of Export-Import Bank of China" that was published in 2000 ("*2000

Administrative Matters*").  *Id.* at 71 & Exhibit II.B.7, P.R. 165, 199; C.R. 89, 112.  In response to

Commerce's questions about loan templates, sample applications, interest rates, and

partner/correspondent banks involved in disbursement of funds under the EBCP, the GOC stated

that those questions were "not applicable" because it claimed that no respondent, nor the U.S. customers of the respondents, benefited from the program during the POI.  *Id.* at 71–73, P.R. 165; C.R. 89.

In addition, in response to Commerce's questions about the steps and efforts the GOC took to determine that no respondent's customers benefitted from the EBCP during the POI, the GOC stated that it searched its "Credit Management System" and supplied screenshots from the system in its response that it claimed were "encompassing all of respondents' U.S. customers." *See id*. at 73-74 & Exhibit II.B.10, P.R. 165, 199; C.R. 89, 113.

Soon afterward, Commerce issued a supplemental questionnaire to the GOC that pointed to evidence on the record that in 2013 CEXIM adopted "certain internal guidelines" and requested copies of those guidelines.  GOC Suppl. Quest. Resp. (Nov. 20, 2023) at 41-44, P.R. 265–269; C.R. 89–130.  The GOC responded that the 2013 guidelines were "internal to the bank, non-public, and not available for release," and although it "used its best efforts" to obtain a copy, it claimed that it had "no authority or right to force the Ex-Im Bank to provide a copy of the 2013 guidelines."  *Id.* at 42, P.R. 265; C.R. 89.  The GOC stated in its response, however, "that the requested information" was not "necessary to render a determination in this investigation."  *Id.* at 43, P.R. 265; C.R. 89.

In addition, for the second time, Commerce requested a list from the GOC of "all partner/correspondent banks involved in the disbursement of funds" under the EBCP, to which the GOC responded that the screenshots it had supplied earlier were sufficient for Commerce's purposes and "{t}hus, a list of partner/correspondent bank(s) is not necessary to either confirm or verify usage of this program, and as such, is not necessary for the Department to render a decision on this program."  *Id.* at 43-44, P.R. 265; C.R. 89.

With respect to Junbang, Commerce issued a questionnaire that requested that the company provide a list of all of its U.S. customers during the POI, and alerted the respondent to the fact that it was asking the GOC to provide information about its U.S. customers that "may have received buyer credits during the POI." Junbang Resp. to Section III of Initial Questionnaire (Oct. 18, 2023) at 13, P.R. 160–164; C.R. 70–88. Commerce encouraged Junbang to coordinate with the GOC and asked Junbang to discuss in detail the role it played in assisting customers to obtain Export Buyer's Credits. *See id.*, P.R. 160; C.R. 70.

In response, Junbang provided a list of its customers, and stated that it never assisted them in obtaining export buyer's credits. *Id.* at 13 & Junbang Exhibit 13, P.R. 160, 162; C.R. 70, 73. In addition, it provided affidavits from some (but not all) of its customers stating that they did not obtain export buyer's credits during the POI. *Id.* at 13 & Junbang Exhibit 14, P.R. 160, 162; C.R. 70, 73. Junbang reported that it is an export trading company that sells protein products produced by its parent company, Shuangta Food, so in its questionnaire response it also provided an additional list of Shuangta Food's U.S. customers, a statement that Shuangta Food did not assist its customers to obtain export buyer's credits, and an affidavit from certain (but not all) Shuangta Food customers stating that they did not obtain export buyer's credits during the POI. *Id.* at "Shuangta Food" pp. 25-26, P.R. 163, C.R. 74, & Shuangta Food Exhibits 15 & 16, P.R. 164; C.R. 76.

In total, Junbang reported that it had [  ] U.S. customers and that Shuangta Food had [  ] U.S. customers. *Id.* at Junbang Exhibit 13 & Shuangta Food Exhibit 15, C.R. 73, 76. Junbang provided a total of only [  ] non-use affidavits from both sets of customers. *Id.* at Junbang Exhibit 14 & Shuangta Food Exhibit 16, C.R. 73, 76. Nowhere in the submission did Junbang address the remaining [  ] customers that did not provide non-use affidavits.

7

2. **The Preliminary Determination**

On December 18, 2023, Commerce issued its preliminary determination.  *Certain Pea Protein from China*, 88 Fed. Reg. 87,403 (Dep't of Commerce Dec. 18, 2023) (prelim. determ.), P.R. 317; accompanying Preliminary Decision Memorandum ("PDM"), P.R. 303.  Commerce determined that because the GOC had not provided the 2013 EBCP guidelines, nor provided a list of intermediary partner/correspondent banks, necessary information was missing from the record and the GOC had not acted to the best of its ability in responding to Commerce's requests for necessary information.  PDM at 30–34.

Commerce explained that under the *2000 Administrative Matters* the EBCP was limited to "two million USD contracts between a mandatory respondent and its customer," but information derived from a prior CVD proceeding indicated that under the 2013 internal guidelines, that threshold no longer applied.  *Id.* at 31 (citing *Certain Amorphous Silica Fabric from China*, 82 Fed. Reg. 8,405 (Dep't of Commerce Jan. 25, 2017) (final CVD determ.); accompanying Issues and Decision Memorandum at 11-14).

Commerce also explained that given the complicated structure of loan disbursements under the EBCP, it was important that Commerce have a complete understanding of how the program operated to verify claims of non-use, and that by not placing that information on the record, as well as other key information, the GOC impeded Commerce's ability to conduct the investigation of the program as it currently existed.  *Id.* at 32.

In addition, Commerce explained that by withholding the names of intermediary partner/correspondent banks, it would be very difficult for Commerce to verify the existence or non-existence of the program.  *Id*. at 32-33.  Commerce explained that without knowledge of the partner or correspondent banks, at verification Commerce might see the names of lending banks

on subledgers of U.S. customers but would have no way to know if loans provided by those banks were "ordinary commercial lending" or "GOC-supported credit in the books and records of the respondents' U.S. customers." *Id.* at 33.

Accordingly, pursuant to 19 U.S.C. § 1677e(a) and (b), Commerce preliminarily determined that the GOC had impeded the proceeding by withholding such information and had not acted to the best of its ability in providing the requested information, thereby warranting the application of AFA. *Id.* at 33. However, Commerce also recognized that the United States Court of International Trade ("CIT" or the "Court") had "directed Commerce in numerous decisions to consider whether any available information provided by respondents may be sufficient to fill the gap of missing record information in considering claims of non-use" for the EBCP. *Id.* at 34.

Commerce therefore considered the certifications of non-use supplied by Junbang and Yantai Oriental. *Id.* With respect to Junbang, Commerce pointed out that "Junbang did not provide attestations from all its POI U.S. customers, only some," and that because there was "no record evidence from all of Junbang's ultimate U.S. importers showing that they did not benefit from the program," Junbang's responses "failed to demonstrate that the company and its customers did not benefit from the program during the POI . . .." *Id.* at 30. Commerce therefore preliminarily determined that the affidavits provided by Junbang did not "allow Commerce to fill the gaps created" by the GOC in the record with respect to the claims of non-use." *Id.* at 34.

### 3. The Administrative Case Briefs and the Final Determination

In its administrative case brief, the GOC argued that it had acted to the best of its ability, that the record established non-use of the EBCP, and that absent a gap of information on the record, there was no lawful basis to apply AFA. GOC Case Br. at 29-36 (Apr. 30, 2024), P.R. 360. Similarly, in its brief Junbang argued that the application of AFA was not warranted

because none of the information that it had supplied Commerce was deficient, and if that

information had been deficient, pursuant to 19 U.S.C. § 1677m(d), Commerce was required to

inform Junbang of the deficiency, so that it could remedy it.  Junbang Case Br. at 2-3 (Apr. 30,

2024), P.R. 362; C.R. 277.  Junbang pointed out that Commerce had issued the other mandatory

respondent supplemental questionnaires seeking further information on the EBCP, but had not

done the same for Junbang.  *Id.* at 4.  Accordingly, Junbang argued that Commerce should not

have applied an adverse inference in determining a rate for Junbang.  *Id.* at 9.

Plaintiffs Liny Yuwang, Shandong Yuwang, and Frenchem Biotek filed no case briefs

with Commerce or any other submissions containing any legal or factual arguments.

In its rebuttal brief, PURIS supported Commerce's decision to apply AFA to the GOC,

arguing that the GOC withheld information critical to Commerce's understanding of the

program's operation and usage, such as the 2013 internal guidelines and the complete list of

partner/correspondent banks involved in the EBCP.  PURIS Rebuttal Br. at 4-5 (May 8, 2024),

P.R. 370.  PURIS also highlighted that Junbang had failed to provide attestations of non-use

from all of its U.S. customers and instead had provided attestations from only a select few of

them.  *Id.* at 4.

On July 5, 2024, Commerce issued its *Final Determination*.  In the IDM, Commerce

addressed the comments of the interested parties with respect to its application of AFA and the

EBCP.  IDM at 24-32, P.R. 376.  Commerce continued to determine that the application of AFA

was warranted and that the EBCP was used by the respondents.  *Id.* at 26.  Commerce explained

that "the missing information, in particular the 2013 revisions regarding the *Administrative

Measures* and a list of partner banks, is crucial information that would allow Commerce to

effectively review loan information at verification and identify and recognize China's Ex-Im

Bank's involvement in the loans." *Id.* Commerce explained that absent that information, Commerce "would not know what indicia to look for in searching for usage or even what records, databases, or supporting documentation we would need to examine to effectively conduct the verifications . . .." *Id.* at 27. Furthermore, Commerce concluded that Junbang's responses were not "sufficient to fill the gaps in the record resulting from" the Chinese Government's refusal to provide the necessary requested information to Commerce. *Id.* at 26.

With respect to Junbang's arguments that Commerce had issued supplemental questionnaires to Yantai Oriental regarding the EBCP, Commerce explained it had done so because Yantai Oriental had voluntarily provided non-use certifications on behalf of <u>all</u> of its U.S. customers, while Junbang had only provided certifications for some of its U.S. customers. *Id.* at 30–31. Commerce also noted that in *Cooper Kunshan Tire Co., Ltd. v. United States*, 610 F. Supp. 3d 1287, 1313–1318 (Ct. Int'l Trade 2022) ("*Cooper Tire*"), the Court held that 19 U.S.C. § 1677m(d) "does not require Commerce to request non-use certifications from U.S. customers" because Commerce had determined to apply adverse facts available to the GOC, and not Junbang. *Id.* at 30.

Finally, with respect to Junbang's argument that Commerce should select a different rate to apply as AFA to the EBCP, Commerce explained that the rate it had applied, 10.54 percent *ad valorem*, was based on the statutory hierarchy provided in 19 U.S.C. § 1677e(d) and it saw no reason to use an alternative rate as advocated by Junbang. *Id.* at 32.

Plaintiffs timely appealed. *See* Summons, ECF No. 1; Compl. ECF No. 13.

## SUMMARY OF THE ARGUMENT

Junbang provided only a small number of non-use affidavits from its U.S. customers, which in no way "filled the gap" of verifiable, necessary EBCP information on the

administrative record caused by the GOC's failure to act to the best of its ability in the CVD

investigation at issue.  Accordingly, Commerce's decision to apply AFA was supported by

substantial evidence on the record and was otherwise in accordance with law.

Furthermore, Plaintiffs waived their right to a remedy under count III of the Complaint,

as they did not raise that issue in their brief.

In addition, because Plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek

submitted no arguments or raised any concerns in the CVD investigation, but instead submitted

mere procedural filings, they were not "parties" to the CVD investigation "proceeding" under 19

U.S.C. § 1516a(a)(2)(A) and otherwise waived any right to a remedy under the exhaustion

doctrine, pursuant to 28 U.S.C. § 2637(d) and 19 C.F.R. § 309(c)(2).

## ARGUMENT

**I.    COMMERCE'S DETERMINATION THAT JUNBANG BENEFITTED FROM THE EBCP IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW**

The GOC did not act to the best of its ability to provide necessary, verifiable information

to Commerce with respect to the EBCP, and the few customer affidavits that Junbang placed on

the record did not "fill in the gaps" to support its claim that it did not benefit from the EBCP

during the POI.  Junbang does not challenge Commerce's determination that the application of

AFA to the GOC was warranted, but instead argues that Commerce should not have applied

AFA to Junbang's exports in light of the information that it, and its producer, Shuangta Foods,

placed on the record with respect to their non-use of the EBCP.  Pls' Br. at 3-4, 8-11.  In

addition, Junbang argues that to the extent that its submissions were deficient, Commerce failed

to provide it an opportunity to correct those deficiencies under 19 U.S.C. § 1677m(d).  *Id.* at 4,

11–15.  Finally, Junbang argues that even if the application of facts available pursuant to 19

U.S.C. § 1677e(a) was warranted, Commerce should have reduced the rate applied to Junbang's merchandise to take into account the non-use affidavits it placed on the record. *Id*. at 4, 9–11.

As Commerce explained in its IDM, however, the information that the GOC failed to place on the record with respect to the EBCP made verification of the program essentially impossible, and the few customer non-use certifications supplied by Junbang were far from adequate to fill in the gaps resulting from that missing information. IDM at 26–32, P.R. 376. Furthermore, Commerce was under no obligation under 19 U.S.C. § 1677m(d) to inform Junbang of the insufficiency of the few non-use affidavits it placed on the record, nor was Commerce lawfully required to reduce the statutorily-consistent CVD rate applied to the EBCP. Accordingly, substantial evidence supports Commerce's conclusion in the *Final Determination* that Junbang benefited from the EBCP during the POI.

### A. Legal Framework

Commerce's determinations countervailing the EBCP using AFA have been the subject of numerous challenges before the CIT. As it did in this investigation, the GOC has consistently failed to provide Commerce with "a list of all partner/correspondent banks involved in the disbursement of funds" on the program, as well as the "2013 Program revision." *Dalian Meisen Woodworking Co., Ltd. v. United States,* 719 F. Supp. 3d 1322, 1325–1326 (Ct. Int'l Trade 2024) ("*Dalian Meisen*"). At times, the Court has remanded to Commerce its application of AFA under 19 U.S.C. § 1677e(a) and § 1677e(b) to explain "the necessity of the missing information" with respect to "Commerce's verification methodology," because under 19 U.S.C. § 1677m(i)(1) Commerce is required to verify all information relied upon in making a final determination in an investigation. *Cooper Tire*, 610 F. Supp. 3d at 1296; s*ee also Dalian Meisen*, 719 F. Supp. 3d at 1335 (explaining that the "fact that this proceeding is an investigation matters" because "in an

investigation, Commerce must verify all information relied upon in making a final

determination.").  Nonetheless, as the Court held in *Cooper Tire*, "(t)he GOC has been

consistently nonresponsive and uncooperative in EBCP investigations," and this "posture

frustrates Commerce's ability to investigate, places exporters in a difficult and impracticable

position, and creates issues, such the ones in this case, regarding Commerce's consideration of

other information on the record."  *Id.* at 1311.

In the IDM for this investigation, Commerce provided a thorough explanation of why it

could not "understand how the China Ex-Im Bank completes its queries for EBCP loans" without

the 2013 internal guidelines to the program and a list of partner banks.  IDM at 29, P.R. 376.

Commerce also explained why the CEXIM screenshots provided by the GOC were not

sufficient, with respect to information about participating banks and businesses, to identify

potential users of the program.  *Id.*  Furthermore, Commerce explained that without that

information it could not differentiate between "regulator loans and EBCP loans" and it would be

very difficult to effectively "search U.S. customers' accounting systems to confirm non-use."  *Id.*

Accordingly, it is evident that the GOC withheld necessary information, failed to provide

information in the form and manner requested, and significantly impeded the CVD investigation,

pursuant to 19 U.S.C. § 1677e(a)(1) and §§ 1677e(a)(2)(A), (B) and (C).  *See* IDM at 32.

Furthermore, the record supports a determination that the GOC did not act to the best of its

ability in providing that information, and therefore the application of an adverse inference was

warranted, pursuant to section 19 U.S.C.§ 1677e(b).  *Id.*

In general, the Federal Circuit has held that "{c}ooperating respondents may be subject

to collateral effects due to the adverse inferences applied when a government fails to respond to

Commerce's questions." *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) ("*Fine Furniture*").

In the various challenges to Commerce's CVD investigations and reviews of the EBCP, the CIT has consistently held that "to apply an adverse inference that a cooperating party benefited from the EBCP based on the GOC's failure to cooperate," Commerce must conduct the following analysis:

> (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use;
>
> (2) establish how the withheld information creates this gap by explaining why the information the GOC refused to give was necessary to verify claims of non-use; and
>
> (3) show that only the withheld information can fill the gap by explaining why other information, on the record or accessible by respondents, is insufficient.

*Jiangsu Zhongji Lamination Materials v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019) ("*Zhongji*"); *see also Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1327 (Ct. Int'l Trade 2018); *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1360-63 (Ct. Int'l Trade 2019) ("*Clearon Corp*").

Commerce's IDM addressed all three of these "gap test" elements extensively in the IDM. Junbang's challenges pertain to those elements, and in particular, the third element of the gap test – the "other information" placed on the record by Junbang to support its claims of non-use of the EBCP. *See* Pls' Br. at 3-4, 9-15.

**B.    Commerce's Determination to Apply Adverse Facts Available to the EBCP Is Supported By Substantial Evidence and is Otherwise in Accordance with Law**

**1.    Junbang's Submissions Did Not Fill the Gap in the Record to Prove Non-Use of the EBCP by Junbang and Its U.S. Customers**

Junbang's first claim is that because there was allegedly no "gap" in the record with respect to the non-use of the EBCP by Junbang and its U.S. customers, and because the company and its U.S. customers fully complied with Commerce's requests for information, Commerce had no authority to use "adverse facts." Pls' Br. at 9. Junbang also claims that Commerce verified "all of the information" on the record and was "granted access to every entity and everything" that it "wished to examine." *Id.* at 11. In addition, Junbang argues that in conducting its analysis Commerce "ignored the affidavits and statements provided by plaintiff's Customers which established that they did not receive such credit." *Id.* at 10. Junbang therefore claims that Commerce's determination, based on AFA, was "pure speculation and contrary to all the evidence on the record." *Id.* at 9. However, none of these allegations are factually or legally supported by Commerce's analysis or the facts on the administrative record.

First, Commerce made no finding that Junbang or its customers had failed to cooperate to the best of their abilities. Commerce's determination was that the <u>GOC</u> had not acted to the best of its ability, and the information that it failed to provide made verification of certain aspects of the program essentially impossible. IDM at 31-34, P.R. 376.

There was, unequivocally, a gap in the administrative record, and the application of adverse inferences to the GOC was warranted. The key question for Commerce, under the third element of the gap test, was whether the gap in the record caused by the GOC's obstinate refusal to provide the 2013 internal EBCP guidelines and the list of partner/correspondent banks was filled by the non-use information placed on the record by Junbang and its U.S. customers. That

element is one of objective evidence on the administrative record, and not about "best efforts" on behalf of a respondent or its customers.  On the one hand, if the information supplied by Junbang and its customers filled the gap to the extent that Commerce could use it and verify non-use of the program by Junbang's U.S. customers, Commerce was required to use it and not apply facts available, with or without an adverse inference.  On the other hand, if the information supplied by Junbang and its customers did not fill the gap, Commerce was permitted to apply AFA, pursuant to 19 U.S.C. §§ 1677e(a) and (b).  In sum, consistent with the Federal Circuit's holding in *Fine Furniture*, as further clarified by the CIT in multiple cases applying the *Zhongji* gap test, the level of cooperation of Junbang and its customers was not a factor that Commerce was directed by the statute to consider in applying AFA, pursuant to 19 U.S.C. § 1677e(a) and (b). *See Fine Furniture*, 748 F. 3d at 1373; *Zhongji*, 405 F. Supp. 3d at 1333.

Furthermore, the record does not support Junbang's claim that "all of the information" Commerce "wished to examine," was made available to Commerce.  Pls' Br. at 11.  As Commerce explicitly explained in the IDM, it was unable to verify necessary information because of the GOC's failure to act to the best of its ability.  IDM at 29, 33, P.R. 376.  For example, as Commerce explained in the IDM, because it did not have access to lists of partner/correspondent banks, it could not differentiate through verification ordinary commercial lending from disbursements of funds under the EBCP. *Id.*  Thus, Junbang's claim that all relevant information was fully available for Commerce to verify with respect to the EBCP-related information is simply untrue.

In addition, Commerce's analysis in the IDM directly contradicts Junbang's statement that Commerce "ignored the affidavits and statements provided by" Junbang and its customers. Pls' Br. at 10.  As explained above, Junbang submitted affidavits claiming non-use for [      ] of

Shuangta Food's and Junbag's [   ] U.S. customers.  Junbang Resp. to Section III of Initial

Questionnaire at Junbag Exhibits 13 & 14; Shuangta Food Exhibits 15 & 16, C.R. 73, 76.

Junbang provided no explanation for the reason it did not provide U.S. customer affidavits for

the remaining [   ] customers, and even in its Rule 56.2 Motion with the Court, it elects not to

acknowledge the large difference in the total number of its U.S. customers compared to the

number of non-use affidavits it submitted.  Pls' Br. at 4, 8–9.  In the IDM, however, Commerce

did acknowledge that "Junbang provided certifications of non-use for some, but not all, of its

U.S. customers."  IDM at 30, P.R. 376.

Commerce explained that it can only "meaningfully conduct its tracing and completeness

tests" as part of verification at a customer's facility if a respondent has voluntarily submitted

non-use certifications "from *all* its importer customers (indicating cooperation from the full

universe of respondents customers such that subsequent loan questionnaires and/or verification

could reasonably confirm non-use of the program for that respondent despite the GOC's refusal

to provide certain information)." IDM at 30 (emphasis added).

With respect to Junbang's submission of only a limited number of customer non-use

affidavits, Commerce recognized that "Junbang was not able to provide certifications for all of

its importer customers, indicating that some of its U.S. customers would be unwilling to

cooperate with requests for information from Commerce."  *Id.* (citing Junbang's Resp. to Section

III of Initial Questionnaire).  Commerce therefore explained that "Junbang's inability to provide

non-use certifications from all of its U.S. customers meant that Commerce had an insufficient

basis to take further steps – such as issuing supplemental questions – given that some of U.S.

customers were unwilling to cooperate."  *Id.*

In light of Commerce's analysis of Junbang's customer affidavits, there is therefore no basis on which Junbang could claim Commerce "ignored the affidavits and statements provided by plaintiff's Customers," in the IDM.

In the end, Commerce satisfied the third element of the gap test by explaining why the small number of customer non-use affidavits submitted by Junbang did not fill in the gap in the record caused by the GOC with respect to the EBCP.  Commerce explained that the "partial information for non-use" supplied by Junbang did "not leave Commerce with a path towards further investigating, completely verifying (had Commerce exercised its discretion to do so) or otherwise ultimately determining the non-use of this program."  IDM at 30.  Commerce explained further that it is "impossible, and contrary to Commerce's practice, to confirm non-use based on partial non-use information," when there was "no basis to find that the respondent or its customers have sufficiently filled the gaps in the record caused by the GOC's noncooperation and withholding of information."  IDM at 30-31 (citing to *Certain Steel Racks and Parts,* 88 Fed. Reg. 21,177 (Apr. 10, 2023) (final CVD determ.) and accompanying IDM at Comment 1).

As the Federal Circuit has held, "the burden of creating an adequate record lies with interested parties and not with Commerce."  *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011); *see also Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337–1338 (Fed. Cir. 2016).  With respect to the EBCP, as the Court recognized in *Cooper Tire,* Commerce "does not consider even partial certifications to be 'complete gap-filling information.'"  *Cooper Tire*, 610 F. Supp. 3d at 1317 (citing Commerce's remand results in *Risen Energy Co. v United States*, 570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ("*Risen I*")).

Further, the Court in *Cooper Tire* held that this "treatment is consistent with the Court's treatment of incomplete certifications" in other challenges to the EBCP.  *Id.* (referencing, for

example, *Clearon Corp.*, 359 F. Supp. 3d at 1357; *Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312, 1318 (Ct. Int'l Trade 2017)); *see also Baroque Timber Industries (Zhongshan) Co. v. United States*, No. 22-00210, 2025 WL 999962 (Ct. Int'l Trade Apr. 3, 2025) at *17–*18 (explaining that the respondent, Baroque, "did not provide declarations of non-use certifications of the EBC program for all of its U.S. customers" and affirming Commerce's application of AFA as supported by substantial evidence and in accordance with law because "the ancillary documents and Baroque's partial non-use certifications are insufficient or impossible to verify").

Accordingly, the burden was on Junbang to provide Commerce with non-use certifications for all of its U.S. customers in order to, potentially, fill the gap of information on the record created by the GOC. Commerce's practice in this regard was well known at the time Junbang filed its customer non-use affidavits, and had been explicitly affirmed, for example, by the CIT in *Cooper Tire. Cooper Tire*, 610 F. Supp. 3d at 1321. Nonetheless, Junbang supplied non-use certifications from only [   ] out of [   ] U.S. customers, but now it alleges that such information was sufficient for Commerce to determine there were no gaps in the record. There is simply no support for such a claim, and Junbang does not even attempt to explain how such a small number of non-use certifications could sufficiently prove non-use of the program by all other customers.

In furtherance of this argument, Junbang claims that Commerce's IDM "ignored case law which was directly on point." Pls' Br. at 9-11 (citing *Dalian Meisen*, 719 F. Supp. 3d at 1338; *Risen I*, 570 F. Supp. 3d at 1369; *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1344 (Ct. Int'l Trade 2023) ("*Risen II*")). However, the facts of those cases do nothing but highlight

the inadequacies of Junbang's submissions during the underlying investigation and undermine the legitimacy of the claims alleged in its brief.

In *Dalian Meisen*, both examined respondents in the investigation, Meisen and Ancientree, submitted *complete* sets of non-use certifications from *all* of their U.S. customers. In the end, despite the submission of all of Meisen's customers non-use certifications, the Court affirmed the application of AFA to Meisen in determining that the respondent used and benefitted from the EBCP because it could not provide complete and verifiable information in response to Commerce's supplemental EBCP questionnaires. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, No. 20-00110, 2023 WL 3222683, at *8 (Ct. Int'l Trade 2023) ("*Dalian Meisen II*"). With respect to Ancientree, however, in addition to Ancientree's submission of non-use certifications covering all of its U.S. customers, the respondent was also able to report "loan information for fifteen of its twenty-seven unaffiliated U.S. customers, which according to the company, represented approximately 90% of its U.S. sales both by volume and by value during the period of investigation." *Dalian Meisen,* 719 F. Supp. 3d at 1329. Because Commerce was able to verify non-use of the EBCP "by certain of Ancientree's U.S. customers, but could not (or did not) with respect to others," the Court held that it would treat the use of CVDs "differently for the sales to customers whose non-use of the (EBCP) was verified, from those sales where non-use was not verified." *Dalian Meisen*, 719 F. Supp. 3d at 1336.

Notably, the Court's holdings in *Dalian Meisen* do not support Junbang's arguments, because, as noted, Junbang never even met the first threshold of providing a complete set of non-use U.S. customer certifications. Furthermore, for the small number of customer certifications it did supply, Junbang provided no information about the volume or value of sales covered by those certifying customers. *See* Junbang Resp. to Section III of Initial Questionnaire at 13.

**PUBLIC VERSION**

Accordingly, there is no merit to Junbang's claims that the *Dalian Meisen* litigation supports its EBCP arguments.

Similarly, the Court's conclusions in the *Risen* litigation also do not support Junbang's arguments in this case.  In *Risen Energy Co., Ltd. v. United States*, No. 20-03912, 2023 WL 2890019 (Ct. Int'l Trade Apr. 11, 2023) at *3–*5, the Court found that the respondent had provided non-use certifications from all but one of its U.S. customers, along with financial information that represented 95 percent of Risen's sales, with the "missing financial data" representing only "roughly 5% of sales" and involving "smaller importers."  In the end, the Court concluded that "Risen had provided sufficient information from its customers to potentially eliminate any gap in the record caused by the GOC's non-compliance with Commerce's questionnaire."  *Risen II*, 665 F. Supp. 3d 1340.

Clearly, Junbang's limited number of non-use customer certifications did not "eliminate any gap in the record," covering only [   ] percent of its customers — a far cry from the 95 percent of sales at issue in *Risen*.  Furthermore, as Junbang noted in its brief, the *Risen* litigation pertained to an administrative review, while this case involves an investigation.  As the Court held in *Dalian Meisen*, the fact that a proceeding "is an investigation matters" in the context of a challenge to the EBCP, because in investigations Commerce is required to "verify all information relied upon in making a final determination" pursuant to 19 U.S.C. § 1677m(i)(1).  *Dalian Meisen*, 719 F. Supp. 3d at 1335.  In any case, it is evident that the facts and principles set forth in the *Risen* litigation do not support Junbang's claims in this litigation.

Thus, for all of the reasons provided herein, Commerce's determination in the IDM that the small number of customer non-use certifications placed on the record by Junbang did not "fill the gap" in the record resulting from the GOC's failure to provide the necessary information to

prove non-use by Junbang's customers was supported by substantial evidence and was otherwise in accordance with law.

> ### 2. Commerce Was Under No Lawful Obligation to Either Provide Junbang With An Opportunity to Supplement the Record or Reduce the CVD Rate Applied to Junbang's Exported Merchandise

Acknowledging that it only supplied non-use certifications from "a portion" of its customers, Junbang argues that if Commerce determined during the investigation that the submissions were "flawed" or "deficient," it was required to identify such a deficiency and give Junbang the opportunity to correct for that deficiency under 19 U.S.C. § 1677m(d). Pls' Br. at 10, 11–15. In support of this claim, it points to the fact that Commerce issued a supplemental questionnaire to Yantai Oriental, requesting further information about the EBCP, but did not do the same for Junbang. *Id.* at 15. Alternatively, Junbang argues that Commerce should have calculated a CVD rate for Junbang that "took into account" the customers who filed non-use affidavits and "established that they did not receive a credit." *Id.* at 10. However, there is no statutory or otherwise legal basis for either of these claims. Accordingly, Commerce was under no lawful obligation to provide Junbang with an opportunity to supplement the record with affidavits from its remaining customers, or to calculate a lower CVD rate that included adjustments for those customers who submitted non-use affidavits in the first instance.

As explained above, Commerce requested specific information from the GOC. When the GOC did not provide that requested information, Commerce requested that information a second time. *See* GOC Suppl. Quest. Resp. at 41- 44, P.R. 265; C.R. 89. Commerce issued a supplemental questionnaire in the investigation pursuant to section 19 U.S.C. § 1677m(d). Section 1677m(d) requires that when "a response to a request for information" does not "comply with the request," then Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, prove that person with an

opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this title." When the GOC elected again not to provide the necessary requested information, Commerce applied AFA with respect to the EBCP, as explained above.

Commerce did not request that Junbang supplement its customer non-usage affidavits, and likewise did not determine that Junbang had failed to act to the best of its ability or apply adverse inferences based on Junbang's submissions. This is because, as the CIT has held, the "statute does not require Commerce to request that respondents place additional information on the record to fill the gap created by the GOC's noncooperation." *Cooper Tire*, 610 F. Supp. 3d at 1317.

In *Cooper Tire*, the same claim made by Junbang was raised by the plaintiffs in that case. The Court explained that the statute applies only to those parties to whom Commerce may apply AFA. *See id.* The Court held that the interested parties "could have but did not submit any additional information on the record to support their claims of non-use," as it was their burden to create the record. *Id.* (citing *Nan Ya Plastics Corp.*, 810 F.3d at 1337–38; *QVD Food Co.*, 658 F.3d at 1324). In the end, the Court concluded that "Commerce did not have an obligation to ask for the certifications," because it based its application of AFA on the GOC's noncooperation and "not on any need for certifications from customers to verify the EBCP in the first place." *Id.* at 1318.

Accordingly, in the IDM, Commerce responded to Junbang's argument that Commerce was required to provide it with an opportunity to correct "the deficiency," by citing to the Court's decision in *Cooper Tire* and recognizing that "the CIT has found that the Act does not require Commerce to request non-use certifications from U.S. customers." IDM at 30 n.156,

P.R. 376.  Furthermore, it held that the "partial information" Junbang supplied "with respect to

non-use" did not leave it with "a path toward further investigating, completely verifying (if

Commerce exercised its discretion to do so), or otherwise ultimately determining the non-use of

this program" by Junbang.  IDM at 31.  Commerce therefore concluded that the information

supplied by Junbang was "incomplete and inadequate to fill in the record gaps resulting from the

GOC's failure to cooperate by not acting to the best of its ability."  *Id.*

      In furtherance of this argument, Junbang also points to the fact that Commerce issued a

supplemental questionnaire regarding EBCP to Yantai Oriental, but as Commerce explained in

the IDM, Yantai Oriental "voluntarily provided non-use certifications on behalf of *all* of its U.S.

customers."  IDM at 31 (emphasis added).  Thus, similar to other cases addressed above, once

Yantai Oriental met the threshold of supplying non-use certifications covering all of its U.S.

customers, Commerce issued a supplemental questionnaire requesting, for example, "financial

and loan information."  *Id.*

      In the end, like Meisen in the *Dalian Meisen* litigation, Yantai Oriental could not provide

complete information to Commerce's EBCP supplemental questionnaire for all of its customers.

*Id.; see also Dalian Meisen II.*  However, Commerce's actions when faced with the complete

non-use customer affidavits of both Yantai Oriental and Meisen show that Commerce issued

EBCP supplemental questionnaires only after it concluded that there was a possibility that the

respondents could provide information that might potentially fill the gaps caused by the missing

information due to the GOC's noncooperation.  The small number of customer affidavits

supplied by Junbang did not come close to meeting that expectation.  Accordingly, it was

reasonable and lawful for Commerce to not issue an EBCP supplemental questionnaire to

Junbang when faced with non-use affidavits from only [ ] out of [ ] of the respondent's customers.

Finally, Junbang argues that Commerce should have adjusted the CVD rate applied to Junbang's merchandise, "taking into account the entities that established that they did not receive a credit."  Pls' Br. at 10.  This argument appears to be related to Count II of the Complaint, which alleges that Commerce's "selected AFA rate for the Export Buyer's Credit was excessive."  *See* Compl. ¶ 25, ECF No. 13.

There are two fundamental problems with this argument.  First, as shown by the experiences of Yantai Oriental and Meisen, just because a respondent has submitted non-use certifications from certain U.S. customers, that does not mean that those customers have "established" on the record that "they did not receive a credit."  As reflected in the *Dalian Meisen* litigation, after such certifications are submitted, Commerce still must gather additional information, such as complete loan information, from the certifying customers, and it is very possible, as was the case for both Meisen and Yantai Oriental, that those customers may be unable to provide that complete information.  *See Dalian Meisen II* at *6; IDM at 31, P.R. 376. Accordingly, Junbang's stated factual premise that its customers who provided non-use certifications have "established" non-use on the record is incorrect.  A mere certification of non-use of a subsidy by a customer is not, alone, sufficient to fill the gap caused by the GOC's refusal to supply necessary information on the record.

Second, there is no legal basis under which Commerce should adjust its CVD calculations pursuant to certain customer non-use certifications, and tellingly, Junbang has cited to no legal authorities in support of this claim.  The rate applied to the EBCP as AFA, is 10.54 percent *ad valorem*, and is the "highest rate calculated for a similar program in another CVD

proceeding involving imports from China." IDM at 32. It was determined in accordance with

Commerce's statutory CVD AFA hierarchy, as provided in 19 U.S.C. § 1677e(d), and as

Commerce explained in the IDM, its use of that rate "adheres to the statutory guidelines." IDM

at 32. Junbang argues that Commerce should have adjusted that rate to take into consideration

particular customer non-use affidavits, but there was no legal or otherwise reasonable basis for

Commerce to stray from the AFA hierarchy described in the statute. Pls' Br. at 10.

Accordingly, Commerce's selection of the 10.54 percent rate as the AFA rate to apply to the

EBCP was supported by substantial evidence and is otherwise in accordance with law.

## II.    PLAINTIFFS HAVE WAIVED COUNT III OF THEIR COMPLAINT

Count III of the Complaint alleges that Commerce used the wrong denominator for

certain programs. Compl. ¶¶ 27–29, ECF No. 13. However, the Plaintiffs' brief makes no

reference to that allegation, or provides any argument in support of that claim. As the Federal

Circuit has held, the "law is well established that arguments not raised in the opening brief are

waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006); *see

also Cross Med. Prods. Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320-21 n. 3

(Fed. Cir. 2005); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1375 n. 4 (Fed. Cir.

2005); *Echjay Forgings Private Ltd. v. United States*, 475 F. Supp. 3d 1350, 1371 n. 7 (Ct. Int'l

Trade 2020) (holding that any claim not addressed in an opening brief is waived). Accordingly,

plaintiffs have waived any arguments under Count III of the complaint.

## III.   LINYI YUWANG, SHANDONG YUWANG, AND FENCHEM BIOTEK LACK STANDING TO CHALLENGE THE *FINAL DETERMINATION* AND FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

Three of the Plaintiffs to this litigation, Linyi Yuwang, Shandong Yuwang, and Fenchem

Biotek, lack standing to challenge the *Final Determination* under 19 U.S.C. § 1516a(a)(2)(A)

and therefore this Court should deny the Rule 56.2 motion as it applies to them on that basis.

Section 1516a(a) addresses judicial review of CVD and AD determinations.  Under

section 1516a(a)(2)(A), "an interested party who is a party to the proceeding in connection with

which the matter arises may commence an action in the United States Court of International

Trade" and under section 1516a(a)(2)(B)(i), one of the "determinations which may be contested

under subparagraph (A)" is "{f}inal affirmative" CVD determinations under "section 1671d."

19 U.S.C. §§ 1516a(a)(2)(A) & (B).[3]

The Federal Circuit and the CIT have held that "to satisfy the 'party to the proceeding'

requirement, a party's participation in the administrative proceeding 'must reasonably convey the

separate status of a party' and be 'meaningful enough to put {the agency} on notice of a party's

concerns.'"  *Pay Less Here, LLC v. U.S. Int'l Trade Comm.*, No. 24-00152, 2025 WL 1165274

(Ct. Int'l Trade Apr. 22, 2025) at *3 (citing *Laclede Steel* at *2).  As the Federal Circuit

explained in *Laclede Steel*, "the participation requirement 'was intended to bar action by

someone who did not take the opportunity to further its interests on the administrative level.'"

*Laclede Steel* at *2 (citing *American Grape Growers v. United States*, 604 F. Supp. 1245, 1249

---

[3] Although the statute does not define the term "party to the proceeding," Commerce's
regulations define the term as "any interested party that actively participates, through written
submissions of factual information or written argument, in a segment of a proceeding."  19
C.F.R. § 351.102(b)(36).  However, this Court held in *Gov't of Canada v. United States*, 686 F.
Supp. 3d 1320, 1333-1335 (Ct Int'l Trade 2024) ("*Gov't of Canada*") that Commerce's
definition of "party to the proceeding" in the regulation is unlawfully narrow because the Court's
jurisdiction is in its purview, the "added requirements of 'active' participation' and 'written
submissions'" do not appear in the statute and because Congress intended for "access to the CIT"
to be "expanded rather than limited."  *Gov't of Canada*, 686 F. Supp. 3d at 1334 (citations
omitted).  In *Gov't of Canada*, the Court held that the Government was seeking "to depart from
decades of precedent by attempting to devise a new requirement that a 'party to the proceeding'
must submit an administrative case brief under the guise of regulations."  *Id*.  Defendant-
Intervenor's position herein is consistent with former Federal Circuit and CIT precedent on this
point because Linyi Yuwang, Shadong Yuwang, and Fenchem Biotek did not just avoid
submitting an administrative case brief, but in fact the three plaintiffs submitted *nothing* on the
record that "meaningfully" put Commerce "on notice" of their concerns.  *Laclede Steel Co. v.
United States*, No. 96-1029, 1996 WL 384010 (Fed. Cir. July 8, 1996) ("*Laclede Steel*") at *2.

(Ct. Int'l Trade 1985)).  Furthermore, the CIT has held that mere "procedural filings," such as notices of appearance, requests to be placed on a service list, and requests for an administrative review, do not satisfy that requirement.  *See Dongkuk Steel Mill Co., Ltd. v. United States*, 567 F. Supp. 3d 1359, 1362 (Ct. Int'l Trade 2022).

None of the three entities were parties to the CVD investigation proceeding.  Each only filed a standard entry of appearance, an application for access to the administrative protective order, and submitted a response to Commerce's initial quantity and value (Q&V) questionnaire. Linyi Yuwang Q&V Quest. Resp., P.R. 58; C.R. 24; Shandong Yuwang Q&V Quest. Resp., P.R. 59; C.R. 25; Fenchem Biotek Q&V Quest. Resp., P.R. 84; C.R. 33.  To be clear, none of these entities provided *any* arguments on the record or raised *any* concerns to Commerce throughout the entirety of the CVD investigation, whatsoever.  Accordingly, none of these plaintiffs was a "party to the proceeding" under 19 U.S.C. § 1516a(a)(2)(A) and therefore none of these parties has standing to bring this challenge in the first instance.

Furthermore, because these three plaintiffs filed no case briefs, letters, or other submissions on the record of the CVD investigation containing any of the arguments raised in their brief to this Court, they have also failed to exhaust their administrative remedies before Commerce and therefore have waived any claims for relief under the exhaustion doctrine.  Under 28 U.S.C. § 2637(d), the Court "shall, where appropriate, require the exhaustion of administrative remedies," in actions arising from Commerce's AD and CVD determinations. Furthermore, 19 C.F.R. § 351.309(c)(2) states that a "case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results."  The Federal Circuit has recognized that the "exhaustion requirement" under Commerce's regulations is "not simply a creature of court decision, as is sometimes the case, but

is a requirement explicitly imposed by the agency as a prerequisite to judicial review." *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) ("*Dorbest*"); *see also Fuwei Films (Shandong) Co. v. United States*, 791 F. Supp. 2d 1381, 1385 (Ct. Int'l Trade 2011) (explaining that the regulation "carries the force of law and the courts cannot simply ignore it").

As the Federal Circuit held in *Dorbest*, when a party fails to raise an issue or argument in a case brief, in violation of an explicit, regulatory "prerequisite to judicial review," then that party has "waived" the argument and is "precluded" from arguing it before this Court. *Dorbest*, 604 F.3d at 1375.

Accordingly, because Linyi Yuwang, Shadong Yuwang, and Fenchem Biotek were not "parties" to the CVD investigation "proceeding" under 19 U.S.C. § 1516a(a)(2) and also because they waived any right to judicial review of arguments or concerns they did not raise in the CVD investigation under 28 U.S.C. § 2637(d) and 19 C.F.R. § 351.309(c)(2), Defendant-Intervenor respectfully requests that the Court dismiss the Rule 56.2 motion with respect all three plaintiffs.

PUBLIC VERSION

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor respectfully requests that this Court deny Plaintiffs' motion for judgment on the agency record and sustain Commerce's *Final Determination* as supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

Date:  June 27, 2025

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
Scott D. McBride, Esq.

THE BRISTOL GROUP PLLC
1707 L Street NW
Suite 1050
Washington, DC 20036
Tel:  (202) 991-2701

*Counsel to Defendant-Intervenor PURIS*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION**

I hereby certify that according to the word count function of Microsoft Word, which was used to prepare the brief, the foregoing brief contains 9,049 words and therefore complies with word count limitation in the Standard Chambers Procedures.

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
Scott D. McBride, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street NW
Suite 1050
Washington, DC 20036
Tel:  (202) 991-2701

*Counsel to Defendant-Intervenor PURIS*