**Before Hon. Jennifer Choe-Graves**
**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| Zhaoyuan Junbang Trading Co., Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd, <br><br><br> Plaintiffs, <br><br> v. <br><br> United States. | Court No. 24-00180 |

**Reply Brief of Plaintiffs**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

Dated: July 18, 2025

**Table of Contents**

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT...........................................................................................2

     A. Commerce's Decision to Countervail the Export Buyer's Credit
        Program in the Final Determination based on Facts Available and
        to use Adverse Inferences is Not Supported by Substantial
        Evidence and is otherwise not in Accordance with Law ......................... 2

     B. The Department Ignored Facts of Record in Calculating the EBC............3

     C. The Department Did Not Provide an Opportunity to Remedy Any
        Deficiency.................................................................................................6

III.  CONCLUSION......................................................................................9

# Table of Authorities

Court:

*Dalian Meisen Woodworking Co. v. United States*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024)................................................................................3,5

*Guizhou Tyre Co. v. United States,* 415 F. Supp. 3d 1402 (2019) ............................5

*Mukand, Ltd. v. United States*, 7676 F.3d 1300 (Fed. Cir. 2014) ..............................9

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) ................4

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ......................6

*NSK Ltd. et al. v. United States* 481 F.3d 1355(Fed. Cir. 2007)...............................9

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185  (Fed. Cir. 1990)....................4

*Risen  Energy Co. v. United States*, (Risen I) 570 F.Supp. 3d 1369 (2022)..............4

*Risen  Energy Co. v. United States* (Risen III), 665 F.Supp. 3d 1335 (2023)...........4

*Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 57 (Ct. Intl Trade 1993) ...........................................................................................................4

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268  F.3d 1376 (Fed. Cir. 2001) ..........................................................4

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013)........................................................................................4

Statute

19 U.S.C. 1677m  ....................................................................................... 6

Administrative

19 CFR 352.102(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| Zhaoyuan Junbang Trading Co., Ltd., et. al.,<br><br>                        Plaintiffs,<br>           and<br>Nura USA, LLC,<br><br>                    Plaintiff-Intervenor,<br>           v.<br>United States,<br><br>                    Defendant,<br>           and<br>Puris Proteins, LLC d/b/a as Puris,<br><br>                    Defendant-Intervenor. |

Court No. 24-00180

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS REPLY TO RESPONSE OF UNITED STATES**
**AND DEFENDANT INTERVENOR TO PLAINTIFF'S MOTION**
**FOR JUDGMENT UPON THE AGENCY RECORD**

## I.    <u>INTRODUCTION</u>

This is the reply to the responses of the defendant and defendant-intervenor to plaintiff's motion for Judgment on the Agency Record. This is not a complex matter and there is essentially one issue before the Court – whether the Department's calculation of the rate of the Export Buyer's Credit was accurate or whether the Department erred in this calculation. This error is based on two separate prongs – that of the application of AFA to a fully cooperative respondent and that of ignoring the multiple affidavits from the customers that they did not benefit from the Export Buyer's Credit. This was compounded by the Department's failure to issue any supplemental questionnaire on this issue or to ask for further information from plaintiff.

1

## II.   ARGUMENT:

As a preliminary matter, plaintiff continues to rely upon its primary case brief in this matter.

### A. Commerce's Decision to Countervail the Export Buyer's Credit Program in the *Final Determination* based on Facts Available and to use Adverse Inferences is Not Supported by Substantial Evidence and is otherwise not in Accordance with Law

At pages 14 -19 of Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record ("Def. Resp") and on pages 16-23 of Defendant-Intervenor's Response Brief ("DI Resp") it was argued that the failure of the Government of China, not any failure on the part of plaintiffs, was the basis for the use of total facts available with adverse inferences in calculating the subsidy provided by the Export Buyer's Credit ("EBC").  Critically, the Department calculated this amount based on total adverse facts and did not take into account in any fashion the information provided by plaintiffs in their various responses.  In the absence of a complete gap in the record, and based on the full cooperation of the respondent, the application of total AFA was inappropriate.

Plaintiffs provided all of the information their possession stating that they did not receive any benefits nor had they assisted any of their customers in getting an EBC.  Plaintiffs also provided documents from many of its customers establishing that these customers did not benefit from such program. One of the plaintiffs it provided data of [          ] customers (Response to Section III at Exhibit 14)(C.R.73) and the other provided data of [      ] its  customers (Response to Section III at Exhibit 16) (C.R.76) and an additional [  ] affidavits were provided in the first supplemental questionnaire. (Supplemental Questionnaire Response at Exhibit SQ-5)  (C.R. 177). This represented a total of [      ] customers.  There is no evidence of record that plaintiffs did not fully cooperate nor is there any evidence,

2

PUBLIC VERSION

let alone allegation, that plaintiffs did not provide all of the information in their possession or could be reasonably obtained by plaintiff. Simply put, there was substantial evidence of non-use provided by plaintiffs and their customers, and there is no evidence of use, nor is there any reasonable adverse inference which would support the use of total adverse facts. The Department's determination is pure speculation and contrary to all of the evidence of record. The Courts have agreed with this and found that the application of AFA where the only evidence is speculation was not appropriate. (See *Dalian Meisen Woodworking Co. v. United States*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024)). At a bare minimum, the Department should have calculated the rate based on neutral facts available.

### B. The Department Ignored Facts of Record in Calculating the EBC

At pages 19-23 of Def. Resp and on pages 16-23 of DI Resp it was argued that as the affidavits attesting to the non-use of the EBC did not cover all of the plaintiffs' customers, that such affidavits did not need to be taken into account. Plaintiffs submitted all of the information that it was able to obtain and such information included affidavits of non-use from a significant number of customers. The Department did not find that plaintiffs failed to cooperate, but also elected to use none of this information. The Department should, at a minimum, have reduced the amount of the EBC found to be countervailable as the affidavits clearly demonstrated that many of plaintiff's customers did not avail themselves of this program and thus a benefit which was based on 100% participation was clearly excessive and inaccurate. Defendant has argued that only a "small" percentage of customers responded. (Def. Resp. at 24). Plaintiff disagrees with this characterization as small, and in fact notes that the Defendant miscalculated the number. The defendant claimed it was [    ] (Def. Resp at 8) when in fact, it was more than [    ]. In terms of raw numbers, it was more than [    ] of the customers, and the Department

3

has no facts of record establishing the percentage of these customers in terms of volume. This ignores a primary principle which governs Department proceedings, that of accuracy. Congress intended that Commerce calculate margins as accurately as possible and use the best available information. *See Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013). In *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016), the Court explained that a Commerce determination is "'accurate' if it is correct as a <u>mathematical and factual matter</u>…" (emphasis added). The Courts have noted that "one of the fundamental principles underlying the trade statute –accuracy. It is this endeavor for accuracy … that lends respectability to U.S. trade statutes." *Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 57, 64 (Ct. Intl Trade 1993).

Critically, the Department ignored case law which was directly on point and which was clear and unequivocal. See *Risen Energy Co. v. United States*, (Risen I) 46 CIT __, 570 F.Supp. 3d 1369 (2022) and *Risen Energy Co. v. United States* (Risen III), 47 CIT __, 665 F.Supp. 3d 1335 (2023) and Plaintiffs' Motion for Judgment. The Court held:

> At this stage, every piece of evidence presented to Commerce and to the court supports the conclusion that Risen's sales were not aided by the EBCP. In the face of substantial evidence of non-use from Risen and its customers, and no evidence of use supported by actual evidence or any reasonable AFA inference, Commerce must not include a subsidy amount for EBCP.
> *Risen* III at 1344

The *Risen* case involved an Administrative Review, not an investigation, but is still applicable. The Courts have also expanded this doctrine to investigations.

In *Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F.Supp.3d 1322 (Ct. Int'l Trade 2024) the Court held that " on remand, for each customer whose non-use of the Program  was verified Commerce must determine a customer-specific rate that excludes a subsidy amount for the Program, and recalculate Ancientree's total rate, and the all others rate." *Dalian Meisen* at 1338.

The primary difference is that in an investigation, the information must be verified.  However, in the case at bar, all of  the information was verified by the Department, and all of the programs for which the Department elected to examine were verified.  (C.R. 347).  As noted in *Dalian Meissen*:

> Nothing in the statutory directive that Commerce "shall verify all information relied upon in making... a final determination in an investigation" suggests that unless all information is verified, none of the information that is actually verified can be relied upon to make a final determination. But here instead of relying on the non-use information on the record that the Department was able to verify, Commerce relied on adverse facts available as applied to all of Ancientree's U.S. sales.
> *Dalian Meisen* at 1336

In this matter, the Department conducted a verification.  (C.R. 274) It was granted access to every entity and everything that the Department wished to examine and verify was reviewed.    Information is only considered unverified if it was requested to be examined, but could not be examined, or the examination revealed flaws.  See *Guizhou Tyre Co. v. United States,* 43 CIT ___, ___, 415 F. Supp. 3d 1402, 1405 (2019)  That is not the case here.   The specific information was not requested to be examined, but could have been examined if the DOC had elected to examine this element at verification.  In other words, the EBC data was verified.

Based on the clear precedent cited above, which grew out of reviews and applies to investigations, it is clear that the Department's application of total AFA and the use of adverse facts in its calculation of the EBC is contrary to law where

affidavit's for at least some portion of the customers are provided. The Department should follow precedent, particularly where as here the precedent is on all fours with the facts in this case, and must, at a bare minimum, adjust the rate downward to reflect the established non-use.

C. **The Department Did Not Provide an Opportunity to Remedy Any Deficiency.**

At pages 23-26 of Def. Resp and on pages 23-27 of DI Resp it was argued that the Department did not need to provide to Junbang an opportunity to remedy any deficiency. Rather, as posited by Defendant, it was the Government of China that failed to respond and thus the Department was under no obligation to seek such information from Junbang as it was not the party required to submit these certificates. as the affidavits attesting to the non-use of the EBC did not cover all of the plaintiffs' customers, they did not need to be taken into account. This ignores the fact that the Department does take into account such affidavits in its calculations, even where affidavits from all potential customers were not provided. To the extent that the data is not perfect, the Department should have provided at least one opportunity to identify a deficiency and provide an opportunity to address any deficiency. The countervailing duty process does not require perfection, only that the respondent make maximum efforts. The Court has stated:

> Compliance with the "best of its ability" standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While **the standard does not require perfection** and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping.
> *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Ct. App. Fed. Cir. 2003)(Emphasis Added)

6

There is no allegation that these affidavits were not supplied as a result of inattentiveness, carelessness or inadequate record keeping.  Rather it was the result of unrelated parties not party to the investigation not providing certain data. As part of the understanding that while perfection is not required, accuracy is preferred, the statute provides for a mandatory process for the agency to seek clarification on potential errors.  This statute contemplates that the Department will ask questions if the responses raise questions, rather than rejecting them out of hand.  The controlling statute clearly provides that prior to taking adverse inferences, the Department must identify a deficiency, provide a party an opportunity to correct this deficiency, and the party must then not correct the deficiency.    19 U.S.C. 1677m is quite clear.

It states:

> (d)Deficient submissions
> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—
>    19 U.S.C. 1677m(d)

The Department did not follow the mandate of the statute. The statute essentially has five tests.

1. Was the information provided in a request for information?  If the answer is yes, then the next test should be considered.  If the answer is no, there is nothing to clarify.  This test applies here as the Affidavits were supplied in response to a question by the Department.

2. Did the respondent submit a substantially complete response which the Department determined still raised questions?  If the answer is yes, then the next test should be considered.  If the answer is no, the Department is not required to seek clarification.  In this case, the number of affidavits provided, if considered, would have significantly reduced the amount of the benefit.

3. Does sufficient time remain to seek a clarification?  If the answer is yes, the Department must seek clarification.   If the answer is no, the Department is not required to seek clarification.   Yes.   The Department had time to seek a clarification – having issued supplemental questionnaires after the submission of the initial data.

4. Did the Department request clarification or an explanation or further detail?  If the answer is yes, then the next test should be considered.  If the answer is no, the Department has violated the mandate of the statute.  The Department asked NO questions about the EBC in any supplemental questionnaire.

5. Did the respondent adequately respond to the request from the Department?  This prong is not relevant as 4 was not satisfied.

In this case, Junbang submitted initial information in response to an express request.  Such response was essentially as complete as it could at the time of submission and Junbang answered the questions asked.  The Department had time to ask for clarification, and in fact, issued supplemental questionnaires after the submission of the response.  Such questionnaires did not focus on the EBC issue, but the Department could have done so.  Simply put, the Department did not ask any further questions on the EBC issue.  As the Department did not ask, Junbang could not further respond to the Department as new facts must be provided in response to a questionnaire.  (19 CFR 352.102(b)).  In sum, Junbang provided information about its customers' usage of export buyer's credit in its original Section III response and supplemented this in its first supplemental questionnaire response

(notwithstanding the absence of a question from the Department).   The Department did not identify any flaws in the reported data, nor whether the data was sufficient to be used at least in part,  nor did the Department ask any further questions about the EBC program.  The Courts have long held that in applying this statutory provision, the Department must provide an opportunity to remedy or explain any deficiency. See *NSK Ltd. et al. v. United States* 481 F.3d 1355(Fed. Cir. 2007)  and *Mukand, Ltd. v. United States*, 7676 F.3d 1300 (Fed. Cir. 2014)

In this case, the Department issued multiple supplemental questionnaires to Junbang but did not ask any additional questions about the EBC Program. (P.R. 226, P.R. 263 , and P.R. 308 ).   In stark contrast, the Department did issue a supplemental questionnaire to the other mandatory respondent seeking further information on the EBC Program. (P.R. 227 at 6-8) The issues about EBC were well known to the Department, as illustrated by the questions asked of the other mandatory respondent.  Critically, the data was presented by Junbang in  the initial questionnaire  response.   The  Department  issued  multiple  supplemental questionnaires to Junbang, but did not identify the deficiency and request Junbang to  explain  the purported  discrepancies  or  why it could not provide all of the data. In the absence of such questions, the Department cannot take adverse inferences and use total adverse facts in calculating the value for the program.

III.    **CONCLUSION**

Plaintiffs respectfully request that this Court:

Reject  the  arguments  presented  by  Defendant  and  Defendant-Intervenor. Such arguments are without merit; and

Remand this matter to the Department of Commerce to recalculate the countervailing duty subsidy rate by eliminating the EBC subsidy from the calculation.   Such act would be consistent with Court precedent and the facts of this case.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Zhaoyuan Junbang Trading
Co., Ltd., Linyi Yuwang Vegetable
Protein Co., Ltd., Shandong Yuwang
Ecological Food Industry Co., Ltd., and
Fenchem Biotek Ltd, Jian

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date July 18, 2025